1   ELLEN JEAN WINOGRAD, ESQ.
    Nevada State Bar No. 815
2   KELSEY E. GUNDERSON, ESQ.
    Nevada State Bar No. 15238
3   JOSE TAFOYA, ESQ.
    Nevada State Bar No. 16011
4   WOODBURN AND WEDGE
5   6100 Neil Road, Suite 500
    Reno, Nevada 89511
6   Tel:  775-688-3000
    Fax: 775-688-3088
7   ewinograd@woodburnandwedge.com
    kgunderson@woodburnandwedge.com
8   jtafoya@woodburnandwedge.com

9   Attorneys for Defendant
10  WESTERN RANGE ASSOCIATION

11              UNITED STATES DISTRICT COURT

12                  DISTRICT OF NEVADA

13  CIRILO UCHARIMA ALVARADO, on Behalf of      )   Case No. 3:22-cv-00249-MMD-CLB
    Himself and All Others Similarly Situated,  )
14                                              )   **DEFENDANT'S MOTION TO DISMISS
                                                )   PLAINTIFF'S COMPLAINT**
15                               Plaintiff,     )          **OR**
                                                )   **IN THE ALTERNATIVE MOTION TO
16       vs.                                    )   TRANSFER VENUE**
                                                )
17  WESTERN RANGE ASSOCIATION,                  )
                                                )
18                               Defendant.     )
                                                )
19  _____     )

20          Defendant WESTERN RANGE ASSOCIATION ("Western Range"), by and through its counsel,

21  WOODBURN AND WEDGE, files this MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR IN THE

22  ALTERNATIVE MOTION TO TRANSFER OF VENUE.

23          This Motion is based on the following memorandum of points and authorities, the pleadings on

24  file herein and any oral argument at hearing as may be set by the Court.

25  / / /

26  / / /

27  / / /

28  / / /
    / / /

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I     INTRODUCTION AND THE PRECEDENT OF
      *LLACUA v. WESTERN RANGE ASSOCIATION*
      930 F.3d 1161 (10th Cir. 2019)                                      1

II    FACTS AS ALLEGED BY PLAINTIFF                                       3

III   PROCEDURAL BACKGROUND                                              3

IV    BACKGROUND OF THE H-2A PROGRAM                                      4

V     ARGUMENT                                                            5

      A)  THIS MATTER MUST BE DISMISSED AS A MATTER OF LAW                5

          1)  The Standard for Dismissal                                 5

          2)  Res Judicata Requires Dismissal; these Claims
              Have Already Been Fully Adjudicated in the Tenth Circuit
              Court of Appeals                                           6

              (a) There is an Identity of Claims                         8

              (b) There was a Final Judgment on the Merits in *Llacua*   9

              (c) The Same Party (Defendant Western Range) was Involved  9

          3)  Plaintiff's Antitrust Claim Must be Dismissed on the Merits  11

              (a) Plaintiff's Conclusory Allegations Fail to State the Essential
                  Elements of Plaintiff's Claims                         11

              (b) The Alleged Parallel Conduct is Insufficient to State
                  a Conspiracy                                           12

              (c) The State and Federal Regulatory Structure Shields Western
                  Range Association's from Wage and Hour Liability as a Matter  15
                  of Law

                      i    Western Range is Immune Under Noerr-Pennington  15

                      ii   Western Range Cannot be Held Liable for Complying
                           with Wage Laws                                16

          4)  The Complaint Must be Dismissed for Plaintiff's Failure to Join
              One or More Indispensable Parties                          16

      B)  IF THIS COURT DENIES DISMISSAL, VENUE IS IMPROPER IN NEVADA
          AND THE CASE MUST BE TRANSFERRED TO <u>UTAH</u>                18

          1)  The Standard for Change of Venue                          18

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

1

## TABLE OF CONTENTS CONTINUED

2
**Page**

3

4  2)  Plaintiff's Own Allegations Illustrate Defendant is a California
    Non-Profit Corporation with its's Principal Place of Business
5     in Utah                                                        19

6  3)  Plaintiff's Own Allegations Pertain to Purported Multi-State Anti-
    Trust Violations Against Defendant Western Range Association
7     and Suit Must Transfer to Utah                                 19

8  4)  The Instant Lawsuit Could Have Been Filed in the District Court
    of Utah and 28 USC § 1404 (a) Factors Favor Transfer to the District
9     Court of Utah                                                  19

10    (a) The Interests of Justice Favor Transfer                     20

11    (b) The Location of the Potential Witnesses and Documents Also
        Favor Transfer of this Matter                                21

12             i.   Location where Agreements were Executed          21

13             ii.  The State with the Greatest Interest in Protecting all
                    Parties, including Defendant that is Alleged to have
14                  Its Principal Place of Business in Utah          21

15             iii. In Weighing Respective Contacts as Between
                    Nevada and Utah, Favors Utah as the Appropriate
16                  Venue                                            22

17             iv.  The Costs of Litigation Favor Utah as the Appropriate
                    Forum                                            22

18             v.   The Availability of Compulsory Process to Compel
                    Unwilling Witnesses Heavily Weighs in Favor of
19                  Transfer to Utah                                 23

20             vi.  Utah Provides Ease of Access to Sources of Proof 23

21    (c) Plaintiff's Choice of Forum Appears to be an Attempt to Forum
        Shop for a Ruling Outside the Tenth Circuit, which
22        has Already Published a Dispositive Decision on Identical
          Claims Brought Against this Exact Defendant                23

23    (d) The Additional Factors that Favor Transfer of this Case    24

24

25  VI   CONCLUSION                                                  25
26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>PAGES</u>

3

**Federal Statutes and Regulations**

4

28 USC § 1404 ...........................................................................................................................18
28 USC § 1404 (a) .................................................................................................................iii, 19
8 U.S.C § 1184(c)(1) ....................................................................................................................4
8 U.S.C. § 1101(a)(15)(H)(ii)(a) .................................................................................................4
8 U.S.C. § 188(a)(1)....................................................................................................................4
20 C.F.R. § 655.103......................................................................................................................4
20 C.F.R. § 655.122(l)...................................................................................................................2
20 C.F.R. § 655.131 ...................................................................................................................15
20 C.F.R. § 656.16 .......................................................................................................................4
8 C.F.R. § 214.2(h)(5)(iv)(A) ......................................................................................................4

11

**Federal Rules**

12

FRCP 1 .................................................................................................................................20, 22
FRCP 12(b) .............................................................................................................................3, 5
FRCP 19 ......................................................................................................................................16
FRCP 19(a)...................................................................................................................................17
FRCP 8(a)(2) .................................................................................................................................5
FRCP 8(c) ..................................................................................................................................... 7

16

**Nevada Statutes**

17

NRS 239B.030 .............................................................................................................................25

18

**Cases**

19

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.,*
263 F. 3d 239 (3d Cir. 2001) ......................................................................................................16

*Alexander v. Franklin Res., Inc.,*
2007 WL 518859 (N.D. Cal. Feb. 14, 2007).............................................................................24

*Alltrade, Inc. v. Uniweld Products, Inc.,*
946 F.2d 622 (9th Cir.1991)........................................................................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................................3, 5, 6

*Beard v. Sheet Metal Workers Union, Local 150,*
908 F.2d 474 (9th Cir. 1990) ........................................................................................................ 9

*Brown v. Haaland,*
No. 2022 WL 1692934 (D.Nev. May 26, 2022) ...........................................................................6

20

21

22

23

24

25

26

27

28

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,*
429 U.S. 477 (1977)..................................................................................................11

*Burlington N. R. Co. v. Hyundai Merch. Marine Co.,*
63 F.3d 1227 (3d Cir. 1995) ........................................................................................7

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,*
445 U.S. 97 (1980)....................................................................................................16

*Copperweld Corp. v. Independence Tube Corp.,*
467 U.S. 752 (1984)..................................................................................................14

*Costantini v. Trans World Airlines,*
681 F.2d 1199 (9th Cir.1982) ......................................................................................8

Earth Island Inst. v. Quinn,
56 F. Supp. 3d 1110 (N.D. Cal. 2014).......................................................................22

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961)..................................................................................................15

*Hafter Law, LLC v. Pal,*
2014 WL 4656227 (D. Nev. Sept. 17, 2014) .............................................................24

*Hispanic Affairs Project v. Acosta,*
901 F.3d 378 (D.C. Cir. 2018)..............................................................................4, 5, 9

*In re High Fructose Corn Syrup Antitrust Litig.,*
295 F.3d 651 (7th Cir. 2002) .....................................................................................13

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000) ...............................................................................18, 21

Kendall v. Visa U.S.A., Inc.,
518 F.3d 1042 (9th Cir. 2008) ...................................................................................18

*King v. Russell,*
963 F.2d 1301 (9th Cir.1992) ....................................................................................24

*Lens.com, Inc. v. 1-800 CONTACTS, Inc.,*
2012 WL 1155470 (D. Nev. Apr. 4, 2012) .................................................................20

*Leon v. IDX Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) .......................................................................................9

*Llacua v. Western Range,*
930 F.3d.  (10th Cir 2019) ...........................................................................................9

*Lou v. Belzberg,*
834 F.2d 730 (9th Cir. 1987) .....................................................................................24

*Marin v. HEW, Health Care Fin. Agency,*
769 F.2d 590 (9th Cir.1985) ............................................................................................ 6

*Matsushita Elec. Indus. Co.,*
475 U.S., 106 S.Ct. 1348 ............................................................................................... 2

*Mayor & Council of Baltimore v. Citigroup, Inc.,*
709 F.3d 129 (2d Cir.2013) ...........................................................................................15

*McCurry,*
449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ..................................................... 6

*McGlinchy v. Shell Chem. Co.,*
845 F.2d 802 (9th Cir. 1988) .........................................................................................11

*Mendoza v. Perez,*
754 F.3d 1002 (D.C. Cir. 2014) ..................................................................................... 5

*Mitchael v. Intracorp., Inc.,*
179 F.3d 847 (10th Cir.1999) ........................................................................................14

*Monsanto Co. v. Spray Rite Serv. Corp.,*
465 U.S. 752 (1984) .......................................................................................................12

*N. Am. Soccer League,*
883 F.3d ......................................................................................................................... 1

*National Post Office Mail Handlers v. American Postal Workers Union,*
907 F.2d 190, (D.C. Cir. 1990) ...................................................................................... 7

*Nichols v. Mahoney,*
608 F. Supp. 2d 526 (S.D.N.Y. 2009) ......................................................................13, 14

*Oaktree Cap. Mgmt., L.P. v. KPMG,*
963 F. Supp. 2d 1064 (D.Nev. 2013) ............................................................................. 6

*Papsan v. Allain,*
478 U.S. 265 (1886) ........................................................................................................ 3

*Paramount Film Distributing Corp.,*
346 U.S. 537 (1954) ...................................................................................................11, 14

*Parker v. Brown,*
317 U.S. 341 (1943) .......................................................................................................16

*Partney Const., Inc. v. Ducks Unlimited, Inc.,*
2008 WL 4838849 (D. Or. Nov. 3, 2008) .....................................................................23

*Quileute Indian Tribe v. Babbitt*
18 F.3d 1456 (9th Cir. 1994) ........................................................................................16, 17

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008) .............................................................................14

*Scott v. Kuhlmann,*
746 F.2d 1377 (9th Cir. 1984) ............................................................................7, 9

*Sessions Tank Liners, Inc. v. Joor Mfg., Inc.,*
17 F.3d 295 (9th Cir. 1994) ................................................................................16

*Shell Oil Co.,*
2008 WL 268986 (N.D.Cal. Jan 30, 2008) .........................................................20

*Somers v. Apple, Inc.,*
729 F.3d 953 (9th Cir. 2013) ...............................................................................11

*Stewart Org. v. Ricoh Corp.,*
487 U.S. 22, (1988) .............................................................................................18

*Tahoe–Sierra Pres. Council v. Tahoe Reg'l Planning Agency,*
322 F.3d 1064 .............................................................................................. passim

*Taylor v. Sturgell,*
553 U.S. 880 (2008) ......................................................................................6, 7, 10

*Thomas v. Devilbiss,*
408 F. Supp. 1357 (D. Ariz. 1973) ......................................................................17

*Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp.,*
2021 WL 3847802 (D. Nev. Aug. 27, 2021) ........................................................24

*United Mine Workers of America v. Pennington,*
381 U.S. 657 (1965) .............................................................................................15

*United States v. Lara-Unzueta,*
2019 WL 5684197 (D. Ariz. Nov. 1, 2019) ............................................................7

*W. Sys., Inc. v. Ulloa,*
958 F.2d 864 (9th Cir. 1992) ..................................................................................8

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

## LIST OF EXHIBITS

*1.*   Declaration of Elle Jean Winograd

*2.*   *Llacua Second Amended Complaint*

3.   *Llacua* Magistrate Recommendation for Dismissal

4.   Colorado Federal District Court Order Overruling *Llacua* Objections to Recommendation and Judgment of Dismissal

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

# I
## INTRODUCTION AND THE PRECEDENT OF
### *LLACUA v. WESTERN RANGE ASSOCIATION*
#### 930 F.3d 1161 (10th Cir. 2019)

The instant action purports to be a "class action" lawsuit brought by Plaintiff Cirilo Ucharima Alvarado ("Alvarado" or "Plaintiff"), on behalf of himself and all others "similarly situated". [Doc #1, ¶ 1] . Plaintiff alleges inter alia, Western Range and its non-party member ranches[1] engaged in a "horizontal wage fixing agreement and market allocation in violation of the Sherman Act". [Doc #1, ¶ 149–177].

These claims are not new. Plaintiff's counsel[2] previously unsuccessfully brought similar or identical claims against Western Range in the District of Colorado in *Llacua, et al., v. Western Range Association, et al.,* Case No. 15-1889-REB-CBS. A copy of the *Llacua* Second Amended Complaint is filed herewith as Exhibit 2. *Llacua* was ultimately decided in favor of Western Range by the Tenth Circuit Court of Appeals just three years ago, in *Llacua v. W. Range Ass'n,* 930 F.3d 1161 (10th Cir. 2019). The Tenth Circuit affirmed the District Court's dismissal of the sheepherders' identical antitrust claims, for failing to plausibly support the conclusory assertions of an alleged anti-competitive agreement by Western Range.

In *Llacua v. Western Range, supra.,* the Tenth Circuit noted, that (as in the instant case)[3], the "shepherds alleged no explicit Agreement" among the association defendants or their members, nor any votes, rules or enforcement mechanisms. As expressly observed by the Tenth Circuit in the *Llacua* the Court stated:

> Instead, they ask this court to assume that because the Association Defendants assist their members in completing Job Offers and H-2A Applications, they are "fixing" or "setting" wages. These allegations do not, however, plausibly suggest individual member ranches entered into any agreement with the Association Defendants or among themselves to establish and adhere to a specific wage. *See N. Am. Soccer League,* 883 F.3d at 40 (noting circumstantial evidence in the context of a business association must

---

[1] As set forth infra, Western Range operates in 13 different states. *See* Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1.

[2] Plaintiffs in the *Llacua* case were also represented by Alex Hood, who pursued the case through two Dismissals in Colorado District Court and the Tenth Circuit's Affirmation of Western Range's Dismissal. *Llacua, et al., v. Western Range Association, et al.,* 930 F.3d 1161 (10th Cir.)

[3] A cursory perusal of Plaintiff's Complaints in *Llacua* and in the instant case illustrate substantially similar or identical allegations. For this Court's convenience, those identical allegations, (rejected by the Tenth Circuit in affirming Dismissal in *Llacua v. Western Range, supra)* are exemplified in a chart. *See,* Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1. It is almost as if the majority of "facts" and "allegations" were cut and pasted into the instant Complaint from the unsuccessful *Llacua* Second Amended Complaint.

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

1

1
2
3

show "that association members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective" (quotation and alteration omitted)). There is no allegation association members discussed or agreed among themselves how to pay foreign shepherds.

* * *

4
5
6
7
8
9

The same goes for the Shepherds' allegation that the wages offered in H-2A Applications prepared by the Association Defendants were identical. A Job Order must disclose the offered wage. 20 C.F.R. § 655.122(l). <u>The Job Orders attached to the SAC show the Association Defendants complied with this regulation</u>. There are no facts alleged in the SAC from which it can be inferred ranches needed to offer more to attract a sufficient number of qualified workers. The <u>federal government</u> sets the lowest wage that may be offered to H-2A shepherds. Assuming a sufficient supply of qualified labor is available at this wage, no rancher would be logically inclined to offer more.

* * *

10
11

In addition, the alleged conspiracy does not make economic sense. . . . The Supreme Court has indicated courts should look carefully at antitrust cases where the defendants "had no rational economic motive to conspire." *Matsushita Elec. Indus. Co.*, 475 U.S. at 596, 106 S.Ct. 1348.

12

Id. at 1180-1181, emphasis added, citations omitted.

13

Analyzing the relationship between plaintiff's unsuccessful wage-fixing claim and the regulatory

14

overlay of the various H-2A provisions, the Court in *Llacua v. Western Range, supra* stated:

15
16
17
18
19
20
21

Moreover, in reaching this conclusion, the district court correctly concluded the H-2A regulations play an important role. The regulatory overlay is a critical backdrop that provides relevant economic context to the Association Defendants' and Rancher Defendants' alleged conduct. As Twombly directs, in analyzing whether allegations in a complaint state a plausible antitrust agreement, courts must consider the larger context. 550 U.S. at 557, 127 S.Ct. 1955. That the regulatory scheme permits, and in places *requires*, the very actions the Shepherds contend support the inference of a conspiracy is an important contextual consideration. For example, <u>federal law governing the H-2A program explicitly and specifically authorizes associations to coordinate with members to submit "Master Applications"</u>. . . . Given these regulations, the mere process of utilizing joint applications and acting as joint employer does not give rise to a plausible inference of an improper agreement.

22

Id at 1181-1182, emphasis added and by Court.

23

Plaintiff now brings essentially identical claims in this action;[4] apparently hoping to get a

24

different result in a different forum, just three years after the *Llacua v. Western Range, supra*, case was

25

decided in favor of Western Range. Plaintiff is, through the same counsel, attempting to re-litigate

26

identical issues in Nevada and this action must be dismissed.

27

28

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

---

[4] In the current action, Alvarado is represented by Alex Hood at the Towards Justice firm, which also represented Plaintiff *Llacua* in the antitrust suit brought against Western Range in the District of Colorado and the Tenth Circuit. *Llacua, et al. v. Western Range, et al.*, Case No. 15-1889-REB-CBS, 930 F.3d 1161 (10th Cir. 2019).

In the alternative, should this Court deny Western Range's Motion to Dismiss, it must transfer venue to the Utah Federal District Court, where plaintiff admits Defendant has (or had) its principal place of business. [Doc #1, ¶ 27].

## II
## FACTS AS ALLEGED BY PLAINTIFF

Plaintiff alleges he is a Peruvian citizen who came to the United States to work on a temporary H-2A visa as a sheepherder from July 4, 2020 to December 2020. [Doc #1, ¶ 25]. Plaintiff further alleges he was offered a contract that paid him the "minimum wage" set by the Department of Labor ("DOL"). [Doc #1, ¶ 79]. Plaintiff claims that the member ranches and sole Defendant Western Range entered into an agreement to pay the "minimum" that was allowed by the DOL "in violation of the Sherman Act" to set and suppress wages. *See* [Doc #1, ¶¶ 12,17,20,37,40,44,46,56, 149–61]. As set forth above, the allegations and conclusions set forth by Plaintiff herein, are almost identical to the content rejected by the Tenth Circuit in *Llacua v. Western Range, supra. See* chart of allegations contained in the Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1.

As set forth below without repeating the inflammatory, conclusory and overtly provocative allegations, and without creating any issue of "material fact," for this motion, this Court must look to the facially insufficient allegations and recent binding precedent and dismiss this action as a matter of law. FRCP 12(b); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007);[5] *Llacua v. Western Range, supra.*

## III
## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on June 1, 2022 against Western Range [Doc #1], and served Western Range on July 27, 2022.[6]  Western Range now files this Motion to Dismiss Plaintiff's Complaint or in the Alternative Motion to Transfer of Venue.

---

[5] While Western Range Association may dispute many of the "facts" alleged by Plaintiff, for purposes of this motion only, the non-conclusory and non-legal allegations contained within the four corners of Plaintiff's Complaint will be accepted by this Court, which must draw inferences in favor of the non-moving party. *See e.g., Bell Atlantic v. Twombly, supra; Ashcroft v. Iqbal, supra, Papsan v. Allain,* 478 U.S. 265, 286 (1886).

[6] In the interim, Plaintiff moved for leave for additional time to file ex parte *pro hac vice* applications. [Doc #10]

# IV
## BACKGROUND OF H-2A PROGRAM

In *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018), the D.C. Appeals Court addressed many aspects of the H-2A temporary work Visa program that are regulated by both the Department of Labor (DOL) and Homeland Security (DHS). Discussing the nature of H-2A statutory and regulatory scope, the Court stated:

> Dubbed "H-2A," Section 1101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act defines qualifying "nonimmigrant[s]" as those "having a residence in a foreign country" with "no intention of abandoning [it]," and who come to the United States "to perform agricultural labor or services * * * of a *temporary or seasonal nature.*" 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (emphasis added). H-2A-visa holders have no independent route to apply for permanent residency or legal citizenship. Instead, they are dependent on their visa sponsors to lawfully stay in and return to the United States for work. *See* 20 C.F.R. § 656.16 (only employers can opt to apply for a permanent labor certification for herders, which can lead to residency and citizenship).
>
> * * *
>
> The Department of Homeland Security and the Department of Labor are jointly responsible for administering the H-2A program. To obtain an H-2A visa to bring in foreign workers, an employer must first submit to the Labor Department an Application for Temporary Employment Certification. In that Application, the employer must establish that: (i) the temporary foreign worker will "perform agricultural labor or services of a temporary or seasonal nature," 20 C.F.R. § 655.103; (ii) there are no domestic workers available that are qualified to fill the position; and (iii) hiring the foreign workers would not "adversely affect the wages and working conditions of workers in the [United States] similarly employed," *id.* § 655.100;8 U.S.C. § 188(a)(1). If the Labor Department finds that those requirements are met, it may issue the Certification.
>
> * * *
>
> The torch is then passed to the Department of Homeland Security, which makes the final decision on whether or not to grant the employer's H-2A petition. 8 U.S.C § 1184(c)(1). To obtain that final approval, the H-2A petition must establish to Homeland Security's satisfaction that the proposed employment, among other things, is of a "temporary or seasonal nature," 8 C.F.R. § 214.2(h)(5)(iv)(A).

Id at 383, emphasis by Court.

The Court in *Hispanic Affairs Project v. Acosta, supra*, discussed the unique nature of open range sheep and goat herding, emphasizing that the Training Employment Guidance Letter (TEGL) formalized the exemption of herders from the regulation prescribed wage rate and described the method for

calculation of the H-2A open range herders:

> But employers of open-range herders, such as sheep and goat herders, are exempt from that minimum-wage requirement due to the unique characteristics of the position, which include "spending extended periods" of time "in isolated areas and being on call twenty-four hours a day, seven days a week to protect livestock." *Mendoza v. Perez*, 754 F.3d 1002, 1009 (D.C. Cir. 2014). In 2011, the Secretary issued a Training Employment Guidance Letter that formalized the exemption of herder employers from the regulation's prescribed wage rates. <u>The 2011 Guidance Letter adopted instead a different method for calculating the prevailing wage, setting a lower floor for what employers must pay H-2A open-range herders.</u>
> * * *
> The Labor Department then promulgated a new rule, through notice and comment, that took effect on November 16, 2015. 80 Fed. Reg. 62,958 (Oct. 16, 2015). The 2015 Rule laid out a number of regulations governing the employment of seasonal and temporary herders, <u>including minimum-wage standards.</u>

Id at 384, emphasis added.

Affirming the lower Court's dismissal of the wage-based claims the Court in *Hispanic Affairs* concluded:

> For the foregoing reasons, we reverse the district court's holdings that (i) the Project had failed to timely preserve its claim against the Department of Homeland Security's alleged policy or practice of routinely extending "temporary" visas for lengthy periods . . . . <u>As to the remaining issues raised on appeal, we affirm the district court's judgment of dismissal</u>.

Id at 396-397, emphasis added.

V<br>ARGUMENT

**A)   THIS MATTER MUST BE DISMISSED AS A MATTER OF LAW**

   **1)   The Standard for Dismissal**

Pursuant to FRCP 12(b), to survive dismissal, a properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. FRCP 8(a)(2); *Bell Atlantic Corp. v. Twombly, supra.* While FRCP 8(a)(2) does not require detailed factual allegations, it requires "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal, supra.* "Factual allegations must be enough to rise above the speculative level." *Bell Atlantic v. Twombly, supra.* This Nevada District Court has noted that to survive a motion to dismiss, a complaint must therefore contain sufficient factual matter to "state a claim to relief that is plausible on its

face." *Oaktree Cap. Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1073 (D.Nev. 2013) (emphasis added). A claim is facially plausible only when the plaintiff's complaint alleges facts from which the Court can reasonably infer that the Defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal, supra*. When complaint claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Brown v. Haaland*, No. 2022 WL 1692934, at *8 (D.Nev. May 26, 2022).

Allegations of behavior "in line with a wide swath of rational and competitive business strategy" are <u>insufficient</u>; instead there must be factual allegations that are not also consistent with lawful activity and give rise to an inference of unlawful conduct. *Twombly*, 550 U.S. at 554.

In the instant case, as set forth below, Plaintiff's "factual allegations' cannot withstand the tests set forth in *Twombly* and *Iqbal*; Plaintiff's claims are neither plausible nor conceivable, especially given the Dismissal of Identical claims in *Llacua v. Western Range, supra*.

**2) Res Judicata Requires Dismissal; These Claims Have Already Been Fully Adjudicated in the Tenth Circuit Court of Appeals**

The precise issues before this Court and the claims presented by Plaintiff against Western Range, have already been dispositively adjudicated as to Western Range, in the Tenth Circuit Court of Appeals, *Llacua v. Western Range, supra*.

The doctrine of res judicata is intended to "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Marin v. HEW, Health Care Fin. Agency,* 769 F.2d 590, 594 (9th Cir.1985);  *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The doctrine provides that a final judgment on the merits bars further claims by the parties or their privies based on the same cause(s) of action. *Tahoe–Sierra Pres. Council v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 (9th Cir. 2003). The United States Supreme Court has found that (even) <u>nonparties to an earlier judgment may nevertheless be bound by the judgment because they were adequately represented by someone with the same interests who was a party to the previous suit</u>.  *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). As set forth by the Court in *Taylor v. Sturgell, supra*:

"**Representative suits with preclusive effect on nonparties include properly conducted class actions**." Id at 894.

Three elements must be present in order for res judicata to apply: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or privity between the parties. *Tahoe–Sierra Pres. Council*, 322 F.3d at 1077. A final judgment from a different circuit can serve as the basis of a res judicata defense in federal court. *See Taylor v. Sturgell*, supra at 891; see also *United States v. Lara-Unzueta*, 2019 WL 5684197, at *7 (D. Ariz. Nov. 1, 2019).

In *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1238–39 (3d Cir. 1995) the Court decisively denied re-litigation of an issue previously decided. Implying there was "circuit shopping" the Burlington Court noted:

> **Having already litigated and lost this issue within the Ninth Circuit in *Atlantic Mutual*, Burlington now attempts to institute another action raising the same issue within another federal circuit in the hopes that this court would reach a conclusion different from that previously reached.... Burlington cannot now relitigate this issue that it already contested and lost in *Atlantic Mutual.* Issue preclusion applies.**

Id at 1238-1239, emphasis added. See, also *National Post Office Mail Handlers v. American Postal Workers Union*, 907 F.2d 190, (D.C. Cir. 1990), **wherein the Court cautioned about circuit shopping by noting the doctrine of issue preclusion counsels against (re) reaching the merits in the case, regardless of whether it would reject or accept a sister circuit's position. Id at 194**.

FRCP 8(c) allows res judicata to be asserted in a dismissal motion, when doing so raises no disputed issues of fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). A legal analysis of res judicata illustrates that the Plaintiffs' unsuccessful Second Amended Complaint (SAC) in *Llacua v. Western Range Association, et al.*, (the "*Llacua* Complaint") filed herewith as Exhibit 2, is nearly identical to Plaintiff Alvarado's Complaint before this Court. In *Llacua*, the Colorado Magistrate Recommended Dismissal, and the Colorado District Court Overruled *Llacua's* Objections to Recommendation and entered Judgment in favor of Western Range. The Tenth Circuit Court of Appeals' then affirmed that dismissal of *Llacua's* antitrust claims against Western Range in *Llacua v. Western Range, supra*. The *Llacua* Magistrate's Recommendation and District Court Judgment are filed herewith as Exhibits 3 and 4, and they demonstrate that the antitrust issue was fully litigated as to Western Range, decided in Western Range's favor and it is barred by res judicata.

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

1              (a)     <u>There is an Identity of Claims</u>

2         An identity of claims exists when two suits arise from the same transactional nucleus of facts.

3     *Tahoe–Sierra Pres. Council v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

4     Two events are deemed part of the same transaction when they are related to the same set of facts.

5     *See, e.g., W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992). Other factors Courts may consider in

6     determining an identity of claims is whether rights or interests established in the prior judgment would be

7     destroyed or impaired by prosecution of the second action; whether substantially the same evidence is

8     presented in the two actions; and whether the two suits involve infringement of the same right.

9     *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982).

10         In the instant case, a comparison between the dismissed Colorado *Llacua* Complaint and the

11     instant *Alvarado* case clearly depict an identity of claims for res judicata; both primarily allege "antitrust

12     violations". In fact, as they relate to Western Range, the Complaints are nearly identical, and in many

13     instances, are word for word mirrors of each other.[7] *See Llacua* SAC and chart contained within the

14     Declaration of Ellen Jean Winograd, filed herewith as Exhibits 1 and 2.

15         Moreover, in the *Llacua* Recommendation on Defendant's Motion to Dismiss the Second

16     Amended Complaint, the Court analyzed and rejected different "factual" allegations proffered by the

17     sheepherder plaintiffs as evidence of Western Range's alleged antitrust violations and found <u>against the</u>

18     <u>herders and in favor of Western Range</u>. *See Llacua* Recommendation, Order and Jugment, filed

19     herewith as Exhibits 3 and 4.

20         The District Court in *Llacua* **expressly held** that Plaintiffs' mere conclusory assertion of

21     collusion would <u>not</u> be considered to determine if Plaintiffs' Claims were plausible. *Llacua* Magistrate's

22     Recommendation on Dismissal of *Llacua's* SAC, filed herewith as Exhibit 3 at p.19, emphasis added. In

23     the instant case, Plaintiff Alvarado is seemingly attempting to re-assert a nearly identical claim in new

24     forum, desperately hoping for a different Judicial determination. [Doc. #1, ¶ 44].

25         In the instant case, Plaintiff attempts to recycle and revise those same unsuccessful conclusory

26     allegations as "evidence" of an alleged concerted conduct to fix wages offered to domestic and foreign

27

28

---

[7] In fact, it appears that entire portions of the *Llacua* Complaint against Western Range were at best, formulaic recitations, at worst, simply pasted into the instant *Alvarado* Complaint now before this Court.

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

herders. [Doc #1, ¶¶ 55, 87]. A simple review of the "facts" and "evidence" in the present Complaint and in the *Llacua* Complaint show a clear identity of claims. Plaintiff Alvarado brings forth the same conclusory allegations to support the same antitrust claims against the same defendant as in *Llacua*. Plaintiff Alvarado is alleging violations of the same laws as *Llacua* attempted to do. Upon review of both operative complaints, it is abundantly clear the two suits arise from the same transactional nucleus of facts, and thus share an identity of claims. *Tahoe-Sierra Pres. Council v. Tahoe Regional Planning Agency, supra.*

### (b)   There was a Final Judgment on the Merits in *Llacua*

A dismissal with prejudice constitutes a "final judgment on the merits" for res judicata purposes. *Int'l Union of Operating Engineers-Emps. Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr, supra* at 1429; *Leon v. IDX Systems Corp.*, 464 F.3d 951, 962 (9th Cir. 2006); *see also Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 477 n.3 (9th Cir. 1990).

In *Llacua*, the Final Judgment was entered by the Colorado District Court. The *Llacua* Court dismissed plaintiffs' federal claims with prejudice against Western Range and the Court entered Judgment in favor of Western Range. *See Magistrate's Recommendation and Colorado District Court Final Judgment*, filed herewith as Exhibits 3 and 4. Significantly, the Tenth Circuit agreed and affirmed the Judgment of Dismissal as to Western Range in *Llacua v. Western Range*, 930 F.3d. 1160 (10th Cir 2019). The Tenth Circuit decision is precisely the final judgment required for purposes of *res judicata*, requiring dismissal of this action as a matter of law.

### (c)   The Same Party (Defendant Western Range) was Involved

Western Range was a defendant in the *Llacua* litigation. Thus, the relevant question is whether there is privity between Plaintiff Alvarado, a sheepherder for a Western Range member working in the United States under the H-2A program, and plaintiffs in *Llacua*, who were sheepherders for Western Range members working in the United States under the H-2A program.[8] In fact, at least one Plaintiff

---

[8] Alex Hood was counsel for all Plaintiffs including *Llacua* in Plaintiff's unsuccessful Colorado litigation as well as *Alvarado* in the instant case. Alex Hood also unsuccessfully sued the Department of Labor and Western Range in *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (2018). His involvement in the unsuccessful *Llacua* matter in Colorado could explain his formulaic attempt to obtain a different result in this action against Western Range.

1    (Rafael De La Cruz) and Defendant (Estill Ranches) were located in Nevada. *See Llacua* Complaint,

2    filed herewith as Exhibit 2, pp 6-7.

3         Privity exists if there is substantial identity or sufficient commonality of interests between the

4    parties. *Tahoe–Sierra Pres. Council, supra*. A nonparty may be bound by a previous judgment if it was

5    adequately represented by someone with the same interests who was a party to the prior suit. *Taylor v.*

6    *Sturgell,* 553 U.S. 880, 893 (2008). As the Supreme Court noted, **"[r]epresentative suits with**

7    **preclusive effect on nonparties include properly conducted class actions."** ). Id.

8         Here, there is no question that Plaintiff Alvarado, an H-2A sheepherder alleging antitrust claims

9    and wage-fixing on behalf of a "class" of sheepherders, was completely represented by the plaintiffs in

10   *Llacua*, who were *also* H-2A sheepherders alleging the same antitrust claims. They even had/have the

11   same attorney: Alexander Hood.  All Plaintiffs raised nearly identical antitrust "wage fixing" issues on

12   nearly identical facts and legal issues. In fact, one of the classes that the *Llacua* plaintiffs sought to

13   certify was a "WRA Price Fixed Class" for "all persons who worked or applied to work as a shepherd for

14   the WRA or any of the WRA member ranchers beginning on 9/1/11." *Llacua* SAC, filed herewith as

15   Exhibit 2, ¶ 162. The putative class Alvarado seeks to represent in the present action is nearly identical

16   to the class the *Llacua* plaintiffs identified. [Doc. #1, ¶ 137] defining the "Wage Suppression Class" as

17   "All persons who worked or applied to work as a sheepherder for the WRA or any member ranchers of

18   the WRA. Plaintiff Alvarado cannot reasonably argue his interests were not adequately represented by

19   the plaintiffs in *Llacua.*

20        Alvarado's interests were identical to the putative "class" in *Llacua* and those interests were

21   adequately represented by the *Llacua* plaintiffs' pursuit of antitrust claims against Western Range.

22   Alvarado's privity with the *Llacua* sheepherders is therefore established. It is also clear that Plaintiff

23   Alvarado's claims are nothing more than recycled allegations previously raised and dismissed. *Res*

24   *Judicata* therefore bars Plaintiff's Complaint. Plaintiff and his counsel must not be permitted to

25   incessantly and unreasonably pursue the same claims against Western Range that have already been

26   adjudicated and dismissed on the merits. This Court must intervene and put an end to the cost and

27   vexation of multiple lawsuits it must conserve judicial resources and prevent inconsistent decisions. The

28   bedrock principles of res judicata, require Plaintiff's Complaint be dismissed with prejudice.

WOODBURN AND  WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

### 3) Plaintiff's Antitrust Claim Must be Dismissed on the Merits

Even if this Court determines that *res judicata* is somehow inapplicable, for all the reasons analyzed by and elucidated upon by the 10th Circuit in *Llacua v. Western Range, supra,* this Court must dismiss the "wage-fixing" claim set forth in Plaintiff Alvarado Complaint.

To establish a violation under the Sherman Act, a plaintiff must demonstrate three elements:

1) an agreement, conspiracy, or combination among two or more persons or distinct business entities;
2) which is intended to harm or unreasonably restrain competition; and
3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged.

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

An "antitrust injury" is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Somers v. Apple, Inc., 729 F.3d 953, 963 (9th Cir. 2013); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489 (1977). Allegations of "parallel conduct unfavorable to competition" are insufficient to allege a conspiracy, "absent some factual context suggesting agreement, as distinct from identical, independent action." *Twombly*, 550 U.S. at 548-49.

In the instant case, as demonstrated below and as discussed by the Court in *Llacua*, the requisite elements for anti-trust "wage fixing" are entirely absent.

### (a) Plaintiff's Conclusory Allegations Fail to State the Essential Elements of Plaintiff's Claims

Supreme Court precedent is clear that an antitrust claim must be dismissed if the conspiracy allegations are insufficient. "Because § 1 of the Sherman Act does not prohibit all unreasonable restraints of trade ... but only restraints effected by a contract, combination, or a conspiracy, ... [t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit, or express." *Twombly*, 550 U.S. at 553; *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540 (1954)) (internal citations omitted). A conspiracy claim requires a "complaint with enough factual matter (taken as true) to suggest that an agreement was made ... [and] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. A complaint must allege plausible facts supporting the

conclusion that the conspiring parties "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray Rite Serv. Corp.,* 465 U.S. 752, 768 (1984).

In the instant case, the above elements are absent from Plaintiff's Complaint. Plaintiff's Allegations are conclusory statements that merely ask the Court to *infer* that illegal activity has occurred, without offering a shred of evidence or facts that it has. For example, Plaintiff alludes to "agreements," but cites no actual agreement.

The *Llacua* Court held that certain allegations that Western Range colluded with members to fix wages were conclusory assertions of collusion and conspiracy – not factual allegations. *See* Exhibits 3 and 4 filed herewith, *See also Llacua v. Western Range, supra.* Those conclusory assertions in *Llacua* are the same ones Plaintiff asserts (again) now. Plaintiff is therefore asking this Court to *infer* antitrust violations based on conduct (again), that is strictly in compliance with federal and state wage laws and regulations.

The flaws of Plaintiff's Complaint are summed up succinctly when he states: "Furthermore, although the **DOL sets wage floors for sheepherders** working on an H-2A visa, there is no statute, regulation, or special procedure preventing ranchers from offering higher wages to those works. **Indeed, on information and belief, individual ranchers on occasion do offer individual sheepherders more than the minimum",** and more would do so absent the agreement among WRA members to offer the minimum. [Doc #1, ¶ 40] (emphasis added).

In the case at bar, Plaintiff admits individual member ranches can and do offer higher wages than those set by the DOL, undermining his entire Complaint. In the same paragraph [Doc #1, ¶ 40] Plaintiff also argues those same member ranches are somehow in an "illegal agreement" to only pay the minimum wage. What's more, Plaintiff includes yet another conclusory allegation that the DOL wages would be more, absent "agreement". Plaintiff's own allegations contradict themselves. More importantly, Plaintiff's own factual admission of varying wages, completely vitiates and obviates the legal conclusions Plaintiff leaps to in his Complaint.

### (b)  The Alleged Parallel Conduct is Insufficient to State a Conspiracy

The allegation that the wages offered by Western Range members "align" with the mandated wage rate, while denied, is still consistent with lawful conduct and competitive market behavior

compliant with the H-2A DOL regulations[9]. If the government-established minimum wage (adverse employment wage rate or AEWR) is greater than the natural, market equilibrium wage rate that would occur in the absence of an AEWR, then uniform wages at the minimum wage are precisely the expected economic outcome in a competitive marketplace. Axioms of labor market are in evidence throughout the macro-economy. Even in the absence of government mandates, in the market, prices tend to converge on one a single point. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 658 (7th Cir. 2002).

H-2A sheep herding is hardly the only industry where the minimum wage (in this case AEWRS), differ from the competitive market wage rate, when higher paid work is difficult to find. There is also the added proviso that it is actually unlawful to offer H-2A visa holders a higher wage than domestic workers – a point Plaintiff concedes, [Doc #1, ¶ 39]. These conduits further promote convergence of actual wages at the minimum wage by ranchers, acting in complete independence of one another and in compliance with DOL H-2A wage mandates.

Plaintiff essentially admits the natural competitive wage rate would fall *below* the government-imposed minimum wage because, as he state, H-2A visa holders "are willing to work for wages that are aberrational in the U.S. labor market." [Doc #1, ¶ 65]. By contrast, the allegations that, but for some mythical "conspiracy", herder wages would be *higher* than the government-imposed wage floors are both conclusory, counter-intuitive, and unsupportable by Plaintiff's own allegations. [Doc #1, ¶ 40]

In stark and contradictory contrast, Plaintiffs also allege that employment of foreign workers wrongfully depresses domestic wages. [Doc #1, ¶¶ 132-135]. Plaintiff claims that while historically a labor shortage warranted use of foreign labor, the "dearth of domestic sheepherders today is not the result of an unwilling or incapable workforce; rather, the cause is the WRA members' concerted efforts to suppress wages well below the fair market value of a sheepherders' work." [Doc #1, ¶ 134]. Not only is that too merely a conclusory allegation, but the employment of foreign workers is not an antitrust violation.

In *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 544 (S.D.N.Y. 2009), the Court stated:

Moreover, the second alleged antitrust injury—that defendants inflated the size of the labor pool—is the antithesis of an injury to competition, which is the type

[9] Surely Plaintiff is not claiming millions of dollars because Western Range is complying with the law. That is at best, counter-intuitive, at worst, nonsensical.

13

> of injury the antitrust laws are intended to prevent. Defendants' complaint is not
> about too little competition in the market for construction labor, but too much
> .... The idea that it harms competition to have more people competing for jobs,
> or if there are workers in the market who will compete for jobs by cutting the
> price (i.e., by accepting a lower wage), is ludicrous.

Id at 544.

Allegations that "are so general that they encompass a wide swath of conduct, much of it innocent ...." are simply insufficient to sustain a federal antitrust lawsuit. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). As in *Twombly*, plaintiffs also asserted the defendants had engaged in parallel conduct, relying on allegations similar to those pled here of "lockstep" or "simultaneous" business decisions by defendants as the basis for pleading anticompetitive behavior. *Twombly*, 550 U.S. at 548. The Court rejected that argument, holding that "[b]ecause § 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination or conspiracy,' 'the crucial question is whether the challenged anticompetitive conduct 'stems from independent decision or from an agreement, tacit or express.'" *Id*. at 553;  *See also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984); *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954). A § 1 conspiracy must include evidence tending to exclude the possibility of independent action, because "there is no reason to infer that [defendants] had agreed among themselves to do what was only natural anyway." *Id at* 550 U.S. 554, 566. The *Twombly* Court explained:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not
> suffice. Without more, parallel conduct does not suggest conspiracy, and a
> conclusory allegation of agreement at some unidentified point does not supply
> facts adequate to show illegality.

Id. at 556–557; S*ee also Mitchael v. Intracorp., Inc.,* 179 F.3d 847, 858-59 (10th Cir.1999) which held that while consciously parallel behavior may contribute to a finding of antitrust conspiracy, it is insufficient, standing alone, to prove conspiracy.

In the instant case, Plaintiff's conclusory allegations of a "conspiracy" epitomize wanton speculation. Plaintiff summarily asserts Western Range "colluded" with its members to fix sheepherder wages "at or near precisely the wage floor set by the DOL." [Doc #1, ¶ 44]. By any analysis, what Western Range did was promote member range compliance with the wage rate floors established by

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

the DOL. As conceded by Plaintiff, Western Range itself does <u>not</u> establish the wage floor for sheepherder pay; that is established by the DOL. [Doc #1, ¶ 119].[10]

Nowhere does Plaintiff allege that Western Range instructed its membership that they could *only* pay the minimum monthly wage. *Mayor & Council of Baltimore v. Citigroup, Inc.,* 709 F.3d 129, 138 (2d Cir.2013). Plaintiff uses more conclusory allegations to somehow imply Western Range engaged in illegal behavior merely because it "understood" members were allowed to pay sheepherders more than the DOL-established minimum. [Doc #1, ¶111]. Allegations of action that the member ranches naturally would undertake independently—or as in this case, actions that the member ranches were required to take in paying at least the minimum wages established by the DOL destroys inferences of a conspiracy. *See e.g., Twombly*, 550 U.S. at 566.

In sum, Plaintiff's claims constitute nothing more than parallel conduct, coupled with bare assertions of conspiracy; the *Twombly* court specifically held that <u>does not</u> suffice to state a claim under § 1 of the Sherman Act. The plaintiffs in *Llacua* did not plead enough facts to make antitrust violation plausible then. Similarly, Plaintiff Alvarado's recycled Complaint herein fails to establish plausible antitrust claims, particularly in light of the *Llacua v. Western Range 10th* Circuit decision.

### (c) The State and Federal Regulatory Structure Shields Western Range from Wage and Hour Liability as a Matter of Law

#### i   Western Range is Immune Under Noerr-Pennington

The First Amendment explicitly protects the right to petition the government. The Noerr-Pennington doctrine[11] has long recognized immunity for the very same conduct alleged here. See Eastern R. R. *Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 671 (1965). Thus, in *Pennington*, the defendants could not be liable for paying wages set by the Secretary of Labor, to whom the defendants had petitioned, and in *Noerr*, petitions to the government could not be the basis for an antitrust claim because the Sherman Act is meant to control "business activity" and not "political activity." Simply stated, "parties are immune from

---

[10] Western Range and its members' compliance with DOL wage rates do not give rise to an inference of anticompetitive behavior. Quite the opposite. The H-2A visa application process expressly contemplates that "[a]n association may file a master application on behalf of its employer-members." 20 C.F.R. § 655.131.

[11] The Noerr-Pennington doctrine is amalgamated from two cases: E*astern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365* U.S. 127 (1961) and *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965)

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

1   liability arising from the antitrust injuries caused by government action which results from the

2   petitioning." *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F. 3d 239 (3d Cir. 2001).

3       Here, Plaintiff expressly alleges that the wages set by the DOL have remained "artificially low"

4   because the alleged wage fixing puts "downward pressure on the DOL's wage surveys and thus, the

5   bases for the fixed wages the Western Range member ranches pay." [Doc #1, ¶155]. Thus, to the

6   extent Plaintiffs' allegations of anti-competitive conduct involve the sharing of wage data with the DOL,

7   such activity is expressly protected under the *Noerr-Pennington* doctrine and cannot be the basis for

8   antitrust liability. Further, it is a recognition that the <u>DOL sets wage floors, not Western Range.</u>

9           ii      **Western Range Cannot be Held Liable for Complying**
                    **with Wage Laws**

10

11      Compliance with official government action cannot create antitrust liability. In *Parker v. Brown*,

12   317 U.S. 341, 352 (1943) the Court recognized a [state] government's right to adopt anticompetitive

13   restraints that sovereign states impose as an act of government. *See, also*, *A.D. Bedell v. Phillip Morris*,

14   263 F.3d 239, 254 (9th Cir. 2001). Private entities that follow such anticompetitive government action are

15   similarly shielded from antitrust liability. *See, e.g., Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*, 17 F.3d

16   295, 298 (9th Cir. 1994). *Parker* immunity applies when two conditions are met: "First, the challenged

17   restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy

18   must be 'actively supervised' by the State itself." *California Retail Liquor Dealers Ass'n v. Midcal*

19   *Aluminum, Inc.,* 445 U.S. 97, 105 (1980).

20      In the instant case, Plaintiff alleges the DOL bases its rates on regular wage surveys and the

21   states each set their own minimum wage rates. Such determinations by the DOL and states are clear,

22   affirmative expressions of policy, actively supervised by the relevant state governments via minimum

23   wage enforcement agencies. These meet the two conditions required by *Parker v. Brown, supra*.

24   Accordingly Western Range, which has complied with state and federal regulations is therefore, immune

25   from liability.

26           4)  **The Complaint Must be Dismissed for Plaintiff's Failure to Join One or**
                 **More Indispensable Parties**

27      FRCP 19 provides that a district court may dismiss an action if an absent party is determined to

28   be "indispensable." *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458 (9th Cir. 1994). A party is

required to be joined in an action when in that party's absence, the court cannot accord complete relief among existing parties or the absent party has a claim to a legally protected interest in the outcome of the action. FRCP 19(a); *Quileute Indian Tribe v. Babbitt, supra.* Other Courts within the Ninth Circuit have specifically dismissed actions against private parties, when the causes of action related to the regulatory or administrative actions of a government body, and the governmental entity was not joined.

In *Thomas v. Devilbiss*, 408 F. Supp. 1357 (D. Ariz. 1973), plaintiff sued a private party after the Secretary of Interior affirmed a decision of the administrative law judge declaring that defendants had standing to contest plaintiffs' mining claims and that plaintiffs' regulatory mining claims were null and void. *Id.* at 1358–59. Therein the Court held that the Secretary of the Interior was an indispensable party, and noted:

> If it should be held that plaintiffs are entitled to the relief sought, this Court would not only be allowing a collateral attack but would be amending the Secretary's rule. . . Manifestly, the Court ought not, at least without the presence of the Secretary, grant relief of such far-reaching consequence both to the Department of Interior and those owning or leasing surface rights. In addition, even if the thrust of a suit which names a subordinate (or as in this case, a private party) is in actuality against the Secretary and his administrative regulations, the Secretary is an indispensable party.

Id *at 1360.*

In *Devilbiss*, supra, the DOL made the rules with which Western Range and its members must comply. Therefore, the DOL is an indispensable party to this action as the regulatory body that sets the wage floors Plaintiff now complains of. And, since ranching operations can continue to offer the DOL set wage floor, the DOL is further an indispensable party because this Court cannot provide complete relief among existing parties wherein the DOL has a legally protected interest in the outcome of the action; compliance with DOL regulations is the foundation of Plaintiff's claims.

In the case at bar, even a cursory review of Plaintiff's Complaint in this matter shows that Plaintiff's claims are nothing more than an untimely challenge to the DOL's regulations establishing wage rates for H-2A sheepherders disguised as an antitrust action against Western Range. This was litigated against Western Range and the DOL in Hispanic Affairs v. DOL, Western Range, et al., Plaintiff concedes time and time again that the "shockingly low" wages it alleges the sheepherders are paid are consistent with the wage rate **established by the DOL**. [Doc #1, ¶¶ 12, 17, 20, 37, 40, 44, 46, 56–57, 62, 74–78, 82, 94].

Additionally, an antitrust claim under §1 of the Sherman Act requires a plaintiff to plead evidentiary facts which would prove a contract or conspiracy among **two or more persons or entities**. Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)[12]. In the case before this Court, a single party is named: Western Range. Not only do Plaintiff's conclusory contentions fail to show an illegal contract or conspiracy, but Plaintiff is only suing one party in an alleged conspiracy involving numerous different entities in 13 states. [Doc #1, ¶¶ 58,59] *See* Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1. Thus, while suing <u>only</u> Western Range might be Plaintiff's tactical or strategic decision in this litigation, it cannot sustain the conspiracy claims Plaintiff makes.

### B) IF THIS COURT DENIES DISMISSAL, VENUE IS IMPROPER IN NEVADA AND THE CASE MUST BE TRANSFERRED TO <u>UTAH</u>

#### 1) The Standard for Change of Venue

28 USC § 1404 states in pertinent part:

> "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A district court has discretion to adjudicate transfer motions based upon an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, (1988) The district court must weight multiple factors to determine if transfer is appropriate, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000).

In the instant case, Plaintiff is once again attempting to sidestep Tenth Circuit precedent by alleging the same formulaic conclusory claim in a different circuit, attempting to obtain the opposite outcome. Not only did Plaintiff forum-shop this action but the "representative" class plaintiff (who is

---

[12] Plaintiffs' counsel in *Llacua* obviously realized this when the Complaint named six plaintiffs and seven different Defendants. *See Llacua* Complaint, filed herewith as Exhibit 2. Similarly, when attacking DOL rule making in *Hispanic Affairs v. DOL,* Plaintiff originally also named the Department of Human Services, DOL and Western Range. *Hispanic Affairs v. DOL, supra.*

neither), worked for a few months on a Nevada member ranch. As all documents and the majority of Western Range witnesses are located outside of Nevada, this matter is subject to transfer to Utah where Plaintiff alleges Western Range has its principal place of business. [Doc #1 ¶ 27].

### 2) Plaintiff's Own Allegations Illustrate Defendant is a California Non-Profit Corporation with its's Principal Place of Business in Utah

Plaintiff alleges Western Range is a California non-profit corporation with its principal place of business in Salt Lake City, Utah. [Doc #1, ¶ 27]. By his own Complaint, this action could have been brought in Utah. The fact that Western Range is neither incorporated in Nevada nor maintains its principal place of business in Nevada, supports the transfer of this action to the District of Utah.

### 3) Plaintiff's Own Allegations Pertain to Purported Multi-State Anti-Trust Violations Against Defendant Western Range Association and Suit Must be Transferred to Utah

Plaintiff's claims are not based solely or even substantially on alleged conduct and actions within the State of Nevada. Plaintiff's claims involve alleged collusion and agreements in violation of the Sherman Act across all job orders, applications and employment in states in which Western Range has members. [Doc #1, ¶ 17, 57-61]. Nevada is not the sole forum where this action may be decided and based on the factors discussed *infra*, the location of key witnesses evidence and the existence of on-point controlling precedent[13], the District of Utah (within the 10th Circuit) is the proper venue for this action. In fact, Plaintiff's own Complaint references and excerpts job orders from Washington, Idaho, Montana, California and Oregon. [Doc #1, ¶¶ 59-60].

### 4) The Instant Lawsuit Could Have Been Filed in the District Court of Utah and 28 USC § 1404 (a) Factors Favor Transfer to the District Court of Utah

28 U.S.C. § 1404(a) first requires the court to determine whether the district to which transfer is sought is a district Plaintiff could have filed the action in the first instance. There is no question that Plaintiff could have filed this action in Utah. Plaintiff brings claims based on federal antitrust laws and the Utah District Court would therefore have assumed subject matter jurisdiction as could a Nevada Federal Court. Western Range conducts business in Utah and Plaintiff himself alleges that "**Western**

---

[13] Plaintiff references former Executive Director Dennis Richins in the context of "wage-fixing". [Doc #1 ¶¶ 87-90]. Dennis Richins is and at all times when he was Executive Director, a Utah resident. See Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1.

**Range has its principal place of business in Utah".**[14] [Doc #1, ¶ 27]. Plaintiff's claims also allege

collusion among Western Range and its various members for horizontal wage-fixing agreements and

horizontal market allocation, which would necessarily involve conduct of Western Range and its

members in all states, including Utah.[Doc #1, ¶ 149–177]. Thus, because Western Range transacted

business in Utah and Utah is named as its principal place of business and because Western Range is

alleged to have committed overt acts in Utah, venue is proper in Utah, which is within the Tenth Circuit

that has precedent on the issues raised in this matter.

> ### (a)  The Interests of Justice Favor Transfer

Transfer may be appropriate where, as here, there was an earlier filed action in another district,

and transfer to that district where the previous action was litigated and adjudicated would promote the

interests of justice and judicial economy. FRCP 1; *Mandani v. Shell Oil Co.*, 2008 WL 268986, at *2

(N.D.Cal. Jan 30, 2008) [the district court transferred matter action to the judicial district that had

previously adjudicated a related case, even though the related case had concluded]; *Lens.com, Inc. v.*

*1-800 CONTACTS, Inc.*, 2012 WL 1155470, at *6 (D. Nev. Apr. 4, 2012).

In *Lens.com, Inc., supra*, the Nevada Federal District Court cited judicial economy as one of the

most decisive factors in transferring an antitrust case to the District of Utah because the Utah Court had

already adjudicated similar issues in a trademark action between the parties, and Nevada litigation

would necessarily involve many similar aspects of the case. *Id.* at *2–3, 6. In *Lens.com*, the Court

transferred the action to Utah even though the previous action in Utah was no longer active, and over

the non-moving party's argument that judicial economy would not be served because the prior case had

been spread among at least six different judges. *Id.* at *3.

Notably, the Court in *Lens.com, Inc.* transferred the action in large part on considerations of

judicial economy, even though the trademark and antitrust actions were only *similar*. In the instant case,

the previously adjudicated antitrust action, heard in the Tenth Circuit is *nearly identical* to the claims

brought in this Court. While the Utah Court was not the adjudicating forum in the *Llacua* action, it would

nevertheless be guided by the Tenth Circuit Court's precedent; Controlling precedent that was

established in a case involving nearly identical parties, facts, and issues as are before this Court now. It

---

14 In fact, the Summons shows the Utah address on its face. [Doc #7].

would save significant time and resources if the parties were not forced to re-litigate an identical issue that has already been adjudicated and decided all the way up to the Tenth Circuit Court of Appeals. In the interest of justice and judicial economy, transfer of this action to the Utah District Court should be granted. FRCP 1 Judicial economy *substantially* weighs in favor of transferring the present action to Utah.[15] As discussed *supra*, the claims in the present action are nearly identical to the claims brought against Western Range in the District of Colorado, Case No. 15-1889-REB-CBS, ultimately decided on appeal by the Tenth Circuit in *Llacua v. W. Range Ass'n*, 930 F.3d 1161 (10th Cir. 2019), wherein the Court  affirmed the District Court's dismissal of the sheepherders' antitrust claims against Western Range. Although Utah is not the district which adjudicated the *Llacua* action, the principles of judicial economy favoring transfer still apply.

### (b) The Location of the Potential Witnesses and Documents also Favor Transfer of this Matter

An analysis of the factors enunciated in *Jones v. GNC Franchising, Inc.*, supra, shows that justice and the convenience of the parties and witnesses would be advanced by transferring this action.

### i.  Location Where Agreements were Executed

Plaintiff alleges his part of the application process took place primarily in Peru. [Doc #1, ¶ 49]. However, Plaintiff alleges collusion and antitrust claims based in part on the "testimony" of Western Range's former executive director Dennis Richins. [Doc #1, ¶¶ 86-90]. Any agreement negotiated or executed that Dennis Richins was privy to, would have occurred in Salt Lake City, Utah, where Plaintiff alleged Western Range maintained its principal place of business and where Mr. Richins resides and did during his tenure as executive director of Western Range. [Doc #1 ¶¶ 27,86-90].

### ii.  The State with the Greatest Interest in Protecting all Parties, including Western Range Association that is Alleged to have its Principal Place of Business in Utah

Both the Nevada and Utah District Courts are deemed to be equally familiar with the Sherman Act and this factor is therefore fact neutral. *See Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D. Cal. 2014) [holding neither federal district was "more familiar with the governing law" because the

---

[15] Colorado would also be a logical venue for transfer since it already adjudicated most of these claims in *Llacua* v. Western Range and since Colorado is within the 10th Circuit, where Courts have decisively ruled on issues raised in the instant Complaint.

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

action involved federal law]. Accordingly, under any analysis, Utah, which Plaintiff alleges is Defendant's principal place pf business, is the appropriate forum and venue.

### iii.   In Weighing Respective Contacts Forum Favors Utah as the Appropriate Forum Venue

Despite Plaintiff's unsupported assertion that "a substantial part of the events or omissions giving rise to the claims against [Western Range] occurred in Nevada", an analysis of the contacts relating to the causes of action favor a forum transfer to Utah or anywhere within the 10th Circuit. First, Western Range has numerous member ranches in Utah, and Colorado, Idaho and California. While Western Range also has member ranches in Nevada, it does not currently, nor has it at any time relevant to this Complaint, maintained its principal place of business in Nevada. Former Western Range executive director Dennis Richins is still a resident of Utah. *See* Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1. That Plaintiff's employer was allegedly in Nevada does not weigh in favor of maintaining this action against Western Range in Nevada, because the complaint alleges illegal agreements across Utah and other states in which Western Range has members. Contacts in Utah are more significant by Plaintiff's own allegations. Western Range has its principal place of business. [Doc #1 ¶¶ 27, 87-90].

### iv.   The Costs of Litigation Favor Utah as the Appropriate Forum

In the spirit of FRCP 1 the costs of litigation will be significantly reduced if this action is transferred because the Utah District Court has binding precedent from the Tenth Circuit Court of Appeals relating to the same parties and issues. If the case is not transferred, Western Range will be forced to incur significant attorney's fees and costs relitigating the exact issues that have already been litigated in the Tenth Circuit. A transfer to Utah (or Colorado) would prevent the waste involved with relitigating the same issues again because there is binding, controlling precedent that could facilitate a more efficient litigation. Three of Plaintiff's attorneys are in Colorado (within the Tenth Circuit). The costs of counsel to litigate in the District of Utah will be no different to Plaintiff than litigating in the District of Nevada.

### v. The Availability of Compulsory Process to Compel Unwilling Witnesses Heavily Weighs in Favor of Transfer to Utah

"Convenience of witnesses is often the most important factor in determining whether or not to transfer a given case." *Partney Const., Inc. v. Ducks Unlimited, Inc.*, 2008 WL 4838849, at *3 (D. Or. Nov. 3, 2008). In balancing the convenience of the witnesses, courts give primary consideration to non-party witnesses, as opposed to witnesses who are employees of a party to the litigation. *Id.* On the face of the Complaint and by Plaintiff counsel's own statements, Dennis Richins, Western Range's former executive director, is perhaps the most significant non-party witness. *See* [Doc #1, ¶ 87-90]. Plaintiff alleges that former Western Range Executive Director Mr. Richins' "testimony" provides support for Plaintiff's claims that members agreed with one another to set specific wages. [Doc #1, ¶ 86-90]. Mr. Richins is currently over 80 years of age and resides in Utah. *See* Declaration of Ellen Jean Winograd, filed herewith as Exhibit 1. A transfer to Utah is therefore appropriate for the convenience of a seemingly significant non-party witness as well as others from Western Range residing in Utah.

### vi. Utah Provides Ease of Access to Sources of Proof

Plaintiff is not only alleging antitrust violations in Nevada but claims violations across all states in which Western Range has members. *See* [Doc #1, ¶ 17]. As this "anit-trust" claim was already litigated up through the Tenth Circuit, ease of access to sources lies in the 10th Circuit. Coupled with former Executive Director and other employee's residency and Plaintiff's allegation of the principal place of business, Utah is the most logical location for transfer.

### (c) Plaintiff's Choice of Forum Appears to be an Attempt to Forum Shop for a Ruling Outside the Tenth Circuit, which has already Published a Dispositive Decision on Identical Claims Brought Against this Exact Defendant

This Court must also seek to discourage forum shopping. In situations such as this where Plaintiff's counsel has previously represented an H-2A sheepherder who brought nearly identical claims against Western Range in the tenth circuit, Plaintiff's claims now should not be allowed to proceed in the Ninth Circuit simply because Plaintiff Alvarado seeks a different outcome on essentially similar facts and identical law. It is clear that Plaintiff and his counsel are avoiding the adverse decisive precedent in the Tenth Circuit by now filing this suit nearly identical to the *Llacua* case in this Court; those allegations

1  have already been adjudicated and Plaintiff's forum shopping must not be rewarded.

2  It is axiomatic that courts may consider whether a complaint "smacks of harassment and bad

3  faith" or contains indicia of forum shopping to determine whether a transfer would serve the interests of

4  justice. *Hafter Law, LLC v. Pal*, 2014 WL 4656227, at *6 (D. Nev. Sept. 17, 2014) [citing *King v. Russell*,

5  963 F.2d 1301, 1304 (9th Cir.1992)]; *see also Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *4

6  (N.D. Cal. Feb. 14, 2007) [stating the court may reasonably infer forum shopping where same plaintiff

7  represented by the same counsel filed suit in California after receiving unfavorable rulings from a

8  different venue].

9  Here, the fact that it is a different sheepherder does not change the fact that the nearly identical

10  issues, facts, and claims have already been adjudicated in the tenth circuit and Plaintiff and his counsel

11  are simply engaging in blatant forum shopping. In the interests of justice and as a matter of public

12  policy, transfer to the District of Utah is proper.

13  ### (d) The Additional Factors that Favor Transfer of this Case

14  While a Plaintiff's choice of forum is generally given deference, that deference is not given when

15  the Plaintiff seeks to represent a class. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987);

16  *Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp.*, 2021 WL 3847802, at *5 (D. Nev. Aug. 27,

17  2021). The deference given to a choice of forum is *substantially* reduced when the plaintiff's choice is

18  <u>not</u> his residence. *Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp., supra.*

19  In the instant case Plaintiff seeks to represent a class defined as: "[a]ll persons who worked or

20  applied to work as a sheepherder for the WRA or any of the member ranchers of the WRA." [Doc #1,

21  ¶ 137]. This would necessarily include herders in all states Western Range has members in, including

22  Utah, who by Plaintiff's definition, are Peruvian citizens and/or residents. [Doc #1 ¶ 24]. Thus, his choice

23  of forum is given little or no deference, particularly because it appears he is attempting to avoid 10th

24  Circuit precedent. Courts should disregard a plaintiff's forum choice where the suit is a result of forum-

25  shopping. *See Alexander v. Franklin Res., supra;* citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d

26  622, 628 (9th Cir.1991). Accordingly, if allowed to go forward, Utah would be the appropriate forum and

27  venue.

28

VI
CONCLUSION

Based on the foregoing, Western Range respectfully requests that this Court dismiss Plaintiff's action with prejudice. In the alternative transfer the above-captioned matter to the United States District Court, for the District of Utah.

The undersigned does hereby affirm pursuant to NRS 239B.030 that the preceding document does not contain the social security number of any person.

DATED this _16_ August, 2022.

WOODBURN AND WEDGE

By _Ellen Jean Winograd_
ELLEN JEAN WINOGRAD
KELSEY E. GUNDERSON
JOSE TAFOYA

Attorneys for Defendant
WESTERN RANGE ASSOCIATION

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511
Tel: (775) 688-3000

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 16th, 2022, a true and correct copy of the foregoing was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

TOWARDS JUSTICE
Alex Hood, Esq.
David Seligman, Esq.
Natasha Viteri, Esq.
2480 Fairfax Street, Ste. 220
Denver, CO 80207

THIERMAN BUCK LLP
Mark Thierman, Esq.
Joshua Buck, Esq.
Leah Jones, Esq.
Joshua Hendrickson, Esq.
7287 Lakeside Drive
Reno, Nv 89511

FAIRMARK PARTNERS, LLP
Jamie Crooks, Esq.
1825 7th Street NW, #821
Washington, DC 20001

By: _____
Employee of Woodburn and Wedge