ANTHONY L. HALL, ESQ.
Nevada Bar No. 5977
AHall@SHJNevada.com
DUNCAN G. BURKE, ESQ.
Nevada Bar No. 13081
DBurke@SHJNevada.com
SIMONS HALL JOHNSTON PC
690 Sierra Rose Dr.,
Reno, Nevada 89511
Telephone: (775) 785-0088

*Attorneys for Defendants*
*John Espil Sheep Co., Inc.*
*The Little Paris Sheep Company, LLC*
*Borda Land & Sheep Company, LLC*
*Holland Ranch, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CIRILO UCHARIMA ALVARADO, On Behalf of Himself and All Others Similarly Situated,<br><br>            Plaintiff,<br><br>vs.<br><br>WESTERN RANGE ASSOCIATION, a California non-profit corporation; ELLISON RANCHING COMPANY, a Nevada corporation; JOHN ESPIL SHEEP CO., INC., a Nevada corporation; F.I.M. CORP., a Nevada corporation; THE LITTLE PARIS SHEEP COMPANY, LLC, a Nevada limited liability company; BORDA LAND & SHEEP COMPANY, LLC, a Nevada limited liability company; HOLLAND RANCH, LLC, a Nevada limited liability company; NEED MORE SHEEP CO., LLC, a Nevada limited liability company; and FAULKNER LAND AND LIVESTOCK COMPANY, INC., an Idaho corporation.<br><br>            Defendants. | Case No.:   3:22-cv-00249-MMD-CLB<br><br><br>**MOTION TO DISMISS** |

Pursuant to Federal Rules of Civil Procedure ("FRCP") 8 and 12(b)(6), Defendants John Espil Sheep Co., Inc., The Little Paris Sheep Company, LLC (the "Little Ranch"), Borda Land & Sheep Company, LLC, and Holland Ranch, LLC (collectively, the "Ranch Defendants") move to

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

4

dismiss the Complaint filed by Plaintiff Cirilo Ucharima Alvarado ("Plaintiff" or "Alvarado"). This Motion is based upon the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument that the Court may allow.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

This case concerns the employment of sheepherders through the H-2A program. "The Immigration and Nationality Act provides for the H-2A program, which allows foreign workers to obtain visas to perform agricultural labor or services of a temporary or seasonal nature in the United States." *Little v. Solis*, 297 F.R.D. 474, 476-77 (D. Nev. 2014) (citing 8 U.S.C. § 1101(a)(15)(H)). "H-2A visas can only be granted when there are 'not sufficient workers . . . to perform the labor or services involved' and 'the employment of the [foreign workers] . . . will not adversely affect the wages and working conditions of workers in the United States similarly employed.'" *Little*, 297 F.R.D. at 477 (citing 8 U.S.C. § 1188(a)(1)). Alvarado's allegations, taken as true, allege that ranches who avail themselves of the complex and nuanced H-2A immigration program, regulated by the United States federal government, are subject to antitrust liability as a consequence of complying with the explicit terms of the federal regulations. Alvarado's conclusion is not supported by the law, the facts incorporated in his First Amended Complaint by reference, or common sense.

Alvarado alleges that the Ranch Defendants, together with Need More Sheep Co., LLC, Faulkner Land and Livestock Company, Inc., and Western Range Association (individually, "WRA" and collectively, "Defendants"), engaged in horizontal market allocation in violation of 15 U.S.C. §§ 1, et seq. (the "Sherman Act").[1] However, Alvarado's claim is premised on a demonstrably false

---

[1] The Ranch Defendants dispute the veracity of all of Alvarado's allegations. However, they are mindful that the Court deemed the allegations pertaining to Count I plausible, and sufficient to state a claim as to WRA, in its March 21, 2023, Order (the "March Order"). In making that finding, the Court specifically noted that it was only addressing "whether Plaintiff has sufficiently alleged his first claim and not his second claim regarding horizontal market allocation." March Order at 11 n.9. On this basis, the Ranch Defendants file this motion to dismiss Alvarado's second claim of horizontal market allocation. Additionally, WRA's motion did not require the Court to address the sufficiency of the allegations in Alvarado's first claim as to the Ranch Defendants, and Alvarado's conclusory statements as to the Ranch Defendants' conduct pertaining to his first claim are deficient as a matter of law.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

allegation.  Alvarado claims that "The [WRA] is not a joint employer or staffing agency."  ECF No. 50 ¶ 132.  In actuality, WRA *is* a joint employer for H-2A purposes, as set forth clearly in the job order excerpted in Alvarado's First Amended Complaint, and as determined by federal courts in the district of Nevada.  Moreover, the joint employer relationship between WRA and the other Defendants is sanctioned by the United States Department of Labor (the "DOL") and the contracts utilized as part of that joint employer relationship consist of terms identical to the Code of Federal Regulations.  Indeed, the Sherman Act expressly permits agricultural organizations such as WRA to carry out lawful objectives without violating antitrust laws.  As Alvarado's claim of horizontal market allegation relies on an incorrect linchpin allegation, it must be dismissed with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS

The following material allegations are set forth in the First Amended Complaint to substantiate Alvarado's claim of horizontal market allocation in violation of the Sherman Act:

- Alvarado alleges that Defendants agree "not to compete with each other for sheepherders.  When a worker applies to work through the WRA, the WRA assigns them to a ranch.  Due to this market allocation scheme, there is no opportunity to shop between ranches to seek out those who may offer better pay and treatment because the ranches have surrendered their independence in the labor market to the WRA."  ECF No. 50 ¶ 13.

- Alvarado alleges that "[t]he WRA requires sheepherders to sign a standardized employment contract that provides . . . . during the term of this contract, the employee must work exclusively for an employer in the [WRA] and that employer must be assigned by the [WRA].  This prevents workers from moving between ranches even between seasonal or temporary visas, which sometimes last only a few months, reflecting an agreement between the WRA member ranches to delegate hiring decisions to the WRA, thus depriving the labor market of independent centers of decisionmaking and the competition that would otherwise exist."  *Id.* ¶ 14.

- Alvarado alleges that he "could not shop between ranches because WRA assigned him a ranch, he was required to sign an attestation providing that he could only work

for the ranch designated by the WRA, and the ranches agree not to hire sheepherders from one another." *Id.* ¶ 19.

- Alvarado alleges that "he had no opportunity to leave even if he had wanted to do so given WRA and its member ranches' conspiracy not to hire sheepherders from one another." *Id.* ¶ 21.

- Alvarado alleges that "[w]hile DOL regulations allow membership organizations to fill out applications on behalf of their members, the regulations do not contemplate employers who are members of an organization like the WRA . . . allocating the market for workers between each other." *Id.* ¶ 48.

- Alvarado alleges that Defendants agree that sheepherders "will be assigned to a place of work (ranch) that [the sheepherder] will not be able to change or transfer because [the sheepherder] desire[s] to do so." *Id.* ¶ 131.

- Alvarado alleges that "[n]othing in the relevant regulations authorizes or provides for such naked market division. The WRA is not a joint employer or staffing agency. It is an ongoing contract, combination, or conspiracy among competitors." *Id.* ¶ 132.

- Alvarado alleges *on information and belief* that "WRA members agree not to poach employees from one another, even beyond the prohibition mentioned above and after sheepherders' visa terms expire." *Id.* ¶ 133.

- In paragraph 134, Alvarado alleges *on information and belief* that "WRA members monitor compliance with this agreement and report violators to the WRA." *Id.* ¶ 134.

- Alvarado alleges *on information and belief* that "this agreement is usually adhered to and, when it is not, the WRA threatens to and indeed sometimes does terminate the membership of violators." *Id.* ¶ 135.

- Alvarado alleges *on information and belief* that the substantial terms of this agreement were "that the WRA would allocate sheepherders among its members, the sheepherders would be prohibited from transferring their place of employment, and that WRA members would not solicit each other's sheepherders even after the visa term expired." *Id.* ¶ 136.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

- Alvarado alleges *on information and belief* that "WRA members discussed these terms at WRA meetings." *Id.* ¶ 137.

Alvarado's allegations fall into three categories: (1) allegations that accurately describe procedures followed by Defendants, as required by federal law; (2) allegations that are demonstrably false based on a document incorporated into the First Amended Complaint by reference; and (3) allegations that are no more than threadbare recitals and conclusory assertions. Collectively, Alvarado's allegations fail to state a claim.

## III.   RELEVANT PROCEDURAL HISTORY

Alvarado filed his original complaint on June 1, 2022, alleging two violations of the Sherman Act against WRA. ECF No. 1. On August 16, 2022, WRA filed its motion to dismiss (ECF No. 23), requesting that the Court dismiss Alvarado's first claim for Horizontal Wage-Fixing Agreement (Restraint of Trade, 15 U.S.C. §§ 1, Et Seq.) (the "WRA Motion to Dismiss"). Alvarado filed his response to the WRA Motion to Dismiss on October 14, 2022 (ECF No. 37), and WRA filed its reply on November 22, 2022. ECF No. 42. Thereafter, the Court issued its March Order, denying the WRA Motion to Dismiss.[2] ECF No. 43.

On June 16, 2023, Alvarado filed his First Amended Complaint, adding the Ranch Defendants. ECF No. 50. Other than allegations pertaining to Little Ranch, the First Amended Complaint lacks specific allegations as to the Ranch Defendants, and instead relies on generalized allegations as to "WRA members". *See, e.g.* Section II, *supra*. This Motion follows.

## IV.   LEGAL STANDARD

In order to withstand a Rule 12(b)(6) challenge, a plaintiff's complaint must contain enough

---

[2] In denying the WRA Motion to Dismiss, the Court gave particular weight to Alvarado's allegations concerning testimony of former WRA Executive Director Dennis Richins and an alleged "WRA handbook". *See* March Order at 14:22-15:5. The Court stated that with respect to Alvarado's first claim – wage fixing – those two matters, "taken together, 'contain sufficient factual matter . . . to plausibly suggest that an illegal agreement was made' and to 'nudge [the claim] across the line from conceivable to plausible.'" *Id.* at 15:2-4 (citing *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46-47 (9th Cir. 2022)). Notably, neither the Richins testimony nor the WRA handbook are implicated in Alvarado's second claim of horizontal market allocation, nor are the Ranch Defendants directly implicated by these allegations.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To do so, a complaint must consist of "more than labels and conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). Further, the pleading requirements embodied in Rule 8(a)(2) "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, while a complaint need not contain "detailed factual allegations," it must set forth more than a skeletal set of allegations. *See id.*

When a complaint contains facts that are "merely consistent with" liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557. Further, when, as here, the factual averments contained in a complaint are legally insufficient to establish "all material elements necessary to sustain recovery under some viable legal theory," dismissal is appropriate. *Stevo Design, Inc. v. SBR Marketing Ltd.*, 2013 WL 308996, at *4 (D. Nev. Jan. 25, 2013) (quoting *Twombly*, 550 U.S. at 562). In addition, a "court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Mendoza v. Aurora Loan Servs., LLC*, 2011 WL 2413995, at *2 (D. Nev., Jun. 13, 2011). The Court, for example, need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (opinion amended on other grounds by *Sprewell v. Golden State Warriors,* 275 F.3d 1187 (9th Cir. 2001)); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

Thus, in analyzing a motion to dismiss, the district court may, without converting the motion into one for summary judgment, consider "matters of public record" and other documents that are extrinsic to the complaint "if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal quotations omitted); *see also Committee for Reasonable Regulation of Lake Tahoe v. Tahoe Regional Planning Agency*, 365 F. Supp. 2d 1146, 1153 (D. Nev. 2005) ("A court may also

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

treat certain documents as incorporated by reference into the plaintiff's complaint if  . . . the document forms the basis of the plaintiff's claim.").

## V.    **LEGAL ARGUMENT**

Alvarado's allegations as to the Ranch Defendants as to both claims are deficient in that they fail to plausibly allege individual conduct.  It is not enough for Alvarado to assert that simply by being members of WRA, the Ranch Defendants are responsible for WRA's conduct.  Alvarado must allege more, to elevate his allegations to more than a conclusion that the Ranch Defendants have participated in a Sherman Act violation.  As pled, there are simply not sufficient allegations to plausibly state a claim as to the Ranch Defendants.

Alvarado's second claim constitutes a deliberate mischaracterization of the purpose of WRA, the WRA's relationship with the Ranch Defendants and sheepherders such as Alvarado, and the federal regulations governing the H-2A program.  Alvarado consistently denigrates WRA, including by labeling it a cartel and analogizing its actions, and those of its members, to "fugitive slave laws." *See* ECF No. 50 ¶¶ 114, 142.  Paragraph 142 of the First Amended Complaint should be stricken as impertinent and scandalous under FRCP 12(f),[3] but it must also be recognized as part of a broader attempt to create a distraction from the required elements lacking from Alvarado's claim.

To establish a violation under the Sherman Act, a plaintiff must demonstrate three elements:

1) an agreement, conspiracy, or combination among two or more persons or distinct business entities;
2) which is intended to harm or unreasonably restrain competition; and
3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged.

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

Alvarado's allegations do not satisfy *any* of these elements for Count II – Horizontal Market Allocation (Restraint of Trade, 15 U.S.C. §§ 1, et seq.).  First, WRA is expressly permitted under

---

[3] A motion to strike paragraph 142 is currently pending.  ECF 100.  The allegations of paragraph 20 of the First Amended Complaint should also be stricken, as they are clearly included to enflame and conjure an emotional response, rather than to add pertinent information to an antitrust lawsuit.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

DOL regulations *and* the Sherman Act to exist and serve as a *joint employer* for H-2A program purposes, and cannot therefore constitute "an agreement, conspiracy, or combination among two or more persons or distinct business entities".

Second, the acts of WRA and the Ranch Defendants conforms with laws intended to *increase* competition and the existence of WRA promotes competition in the sheepherder industry that would not otherwise exist.  The alleged conduct cannot therefore constitute an "*unreasonable* restraint[] of trade."  *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 98, 104 S.Ct. 2948 (1984) (emphasis added).

Third, Alvarado has failed to demonstrate damages as the acts alleged are specifically authorized by the H-2A program and Alvarado has failed to allege there exists a domestic market sufficient to perform sheepherder labor without the H-2A program.  Moreover, Alvarado fails to acknowledge the existence of the international market for sheepherders, the sheepherders' ability to consider options other than employment with Defendants, and the sheepherders' ability to negotiate before agreeing to any terms with Defendants.

In addition to the foregoing, Alvarado's allegations as to horizontal market allocation are made principally on information and belief and constitute implausible conclusions of law.

## A.  THE ALLEGATIONS AS TO THE RANCH DEFENDANTS ARE LACKING

Alvarado's allegations are insufficient as they fail to allege specific behavior of the Ranch Defendants.  As to Alvarado's first claim, other than the Little Ranch, Alvarado makes absolutely no allegations that the Ranch Defendants were parties to any alleged wage fixing agreement, or allegations as to specific conduct *at all*.  Instead, Alvarado makes a conclusory assertion that as members of WRA, the Ranch Defendants all agreed to delegate their wage decisions to WRA "with knowledge that the WRA uniformly fixes the wages for sheepherders."  ECF No. 50 ¶ 12. Alvarado's allegations are no more than *conceivable* and certainly do not rise to the requisite level of plausibility to justify the expense of discovery.  "It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 546, 127 S.Ct. 1955; *see also* ECF 96 at 6:12-7:25 and ECF 99 at 9:3-16:9, which are incorporated herein by this reference.

Alvarado's Ranch Defendant-specific allegations are even more lacking with respect to his second claim.  Notably, despite making voluminous and derogatory allegations as to Little Ranch in paragraph 20, Alvarado does not specifically allege that the Little Ranch refused to transfer him to a different ranch, and instead uses the conclusory allegation that he couldn't leave "given WRA and its member ranches' conspiracy not to hire sheepherders from each other."  ECF 50 ¶ 21.  "Membership in an association does not render an association's members automatically liable for antitrust violations committed by the association.  Even participation on the association's board of directors is not enough by itself."  *Kendall*, 518 F.3d at 1048 (citing *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974).  Alvarado's use of blanket allegations against all Defendants is improper.  The Motion should be granted due to Alvarado's failure to allege specific participation by the Ranch Defendants in the horizontal market allocation "scheme".

## B.  ALVARADO FAILS TO DEMONSTRATE AN ILLICIT AGREEMENT BETWEEN DISTINCT BUSINESS ENTITIES

The allegations of the First Amended Complaint fail to state a cognizable claim for horizontal market allocation against Defendants.  As an initial matter, the Sherman Act exempts agricultural organizations and individual members of those organizations from liability where such organizations are lawfully carrying out legitimate objectives, as is true in the instant case.  The regulations governing the H-2A program specifically authorize associations such as WRA to conduct the task of creating and submitting job orders for its members.  Alvarado admits as much in his First Amended Complaint.  *See* ECF 50 ¶ 48 ("While DOL regulations allow membership organizations to fill out applications on behalf of their members . . . .").  However, Alvarado asserts that the regulations "do not contemplate employers who are members of an organization like the WRA . . . allocating the market for workers between each other."  *Id.*  This incorrect legal conclusion is entitled to no deference under the pleading standard and must be evaluated under applicable law.

The regulations not only permit WRA to submit applications, but also permit WRA to be designated as a joint employer for H-2A program purposes, and create a framework for that joint employer relationship.  Additionally, the United States Code provides the mechanism by which employee transfers between association members may be legally effectuated.  Contrary to

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

Alvarado's assertions, WRA and the Ranch Defendant's contracts and conduct are entirely consistent with the regulations and the United States Code and cannot form the basis for antitrust liability.

### 1.  The Sherman Act Protects Agricultural Organizations

WRA facilitates the employment of H-2A foreign workers for its members.  Though legally distinct, in some ways it is similar to a multi-employer bargaining unit, for which antitrust liability does not apply.  *See Brown v. Pro Football, Inc.*, 518 U.S. 231, 243, 116 S.Ct. 2116, 2123-24 (1996) (citing Areeda & Hovenkamp, Antitrust Law ¶ 229'd, at 277 ("[J]oint employer preparation and bargaining in the context of a formal multi-employer bargaining unit is clearly exempt [from antitrust laws]")).  While the antitrust exemption that applies to the collective-bargaining process is not applicable to Alvarado's allegations, the Sherman Act contains specific language insulating Defendants from liability.  15 U.S.C. § 17 states:

> The labor of a human being is not a commodity or article of commerce.  Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbit or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws.

WRA is a nonprofit agricultural organization that serves the purpose of mutual help between member ranches to avail themselves of the H-2A program.  *See* ECF 50 ¶¶ 26, 82 (alleging that WRA is a nonprofit whose principal purpose is to file H-2A applications to recruit sheepherders on behalf of its members).  By the plain language of the Sherman Act, WRA is presumptively *not* an illegal combination or conspiracy in restraint of trade.  *See Metro One Telecommunications, Inc. v. C.I.R.*, 704 F.3d 1057, 1061 (9th Cir. 2012) ("When interpreting a statute, we must start with the language of the statute.  Moreover, 'in the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning") (citations omitted).

Importantly, the Ranch Defendants' citation to 15 U.S.C. 17 is not intended to suggest that Defendants are immunized from antitrust liability for *illegal* activities, but is instead intended to

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

13

demonstrate that antitrust liability is inappropriate for Defendants' lawful and legitimate concerted activity. Additionally, Alvarado's allegations that WRA has deprived the marketplace of independent decision-making are entitled to no weight. There is nothing facially improper about the existence or activities of WRA.

## 2. A Joint Employment Relationship is Lawful and Precludes Anti-Trust Liability

WRA's relationship with its members, including the Ranch Defendants, is lawful and consistent with H-2A regulations.

### i. The Regulations Expressly Permit Associations to File a Master Application as a Joint Employer

In indicating that DOL regulations allow membership organizations to fill out applications on behalf of their members, Alvarado downplays the significance of the legal relationship. In the H-2A Application for Temporary Employment Certification for H-2A workers, an agricultural association must identify "whether it is filing as a sole employer, a joint employer, or an agent." 20 C.F.R. § 655.131(a)(1); *see also* 20 C.F.R. § 655.215(a). Significantly, "[t]he agricultural association may file a master application on behalf of its employer-members. The master application is available only when the agricultural association is filing as a joint employer." 20 C.F.R. 655.131(a)(2); *see also* 20 C.F.R. § 655.215(a). The H-2A regulations thereby expressly contemplate joint employment relationships between ranches and agricultural associations for the purpose of the H-2A program. Additionally, the regulations provide that "[w]here two or more employers each have sufficient definitional indicia of being an employer to be considered the employer of a worker . . . Each employer in a joint employment relationship to a worker is considered a joint employer of that worker." 20 C.F.R. § 655.103(b).

### ii. Alvarado's Allegations and the Job Order Incorporated in the First Amended Complaint Demonstrate WRA is a Joint Employer

Alvarado alleges that "[o]nly if domestic workers do not accept a position offered through a job order can the *employer* submit an Application for Temporary Employment Certification (an "H-2A Application") to the DOL for certification") ECF 50 ¶ 42 (emphasis added) and ¶ 82 ("[a]mong

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

1  other things, one of the principal purposes of the WRA is to file with the DOL H-2A applications

2  on behalf of its members").  According to Alvarado's allegations, employers submit the H-2A

3  Applications and WRA is the entity who submits the H-2A Applications for its members.  It is

4  therefore consistent with Alvarado's allegations that WRA is a joint employer with its members,

5  including the Ranch Defendants.

6       In paragraph 69 of the First Amended Complaint, Alvarado excerpts portion of a job order.

7  The entire job order is attached hereto as **Exhibit 1** (the "Job Order"), and is properly subject to this

8  Court's review as incorporated in the First Amended Complaint by reference.  *See Committee for*

9  *Reasonable Regulation of Lake Tahoe*, 365 F. Supp. 2d at 1153 ("A court may also treat certain

10 documents as incorporated by reference into the plaintiff's complaint if . . . the document forms the

11 basis of the plaintiff's claim").

12      Page 4 of the Job Order includes details as to referral and hiring instructions.  The prospective

13 applicant is informed that WRA will "conduct a full telephone interview with the applicant" and that

14 "[WRA] and its rancher members maintain a strong commitment to providing a safe, efficient, and

15 productive work environment."  *Id.*  The email address for applicants to apply is

16 "applicants@westernrange.net".  The regulations define an "employer" as having "an employment

17 relationship (such as the ability to hire, pay, fire, supervise, or otherwise control the work of an

18 employee) . . . ." 20 C.F.R. § 655.103(b).  Notwithstanding Alvarado's conflicting allegation to the

19 contrary, WRA satisfies the regulatory prerequisites to be considered a joint employer.  *See*

20 *Steckman*, 143 F.3d at 1295-96 ("[W]e are not required to accept as true conclusory allegations

21 which are contradicted by documents referred to in the complaint.").

22      **iii.    Cases in District**

23      In two separate cases in Nevada district court, WRA has been determined to be a joint

24 employer of sheepherders with its member ranches.  In *Little v. Solis*, the Honorable Howard D.

25 McKibben found WRA to be a joint employer, noting it "has the power to hire in that it is the

26 'gatekeeper' of the sheepherders' employment in the U.S . . . ."  297 F.R.D. at 480.  In *Castillo v.*

27 *Western Range Association*, the Honorable Robert C. Jones found that WRA "is clearly a joint

28 employer for H-2A purposes."  2022 WL 4466184 (D. Nev. 2022) at *1.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

*Castillo* is particularly notable because Alvarado's local counsel – Thierman Buck, LLP and attorney Leah L. Jones, Esq. – represents the plaintiff in that action, and argued (successfully) that WRA should be deemed a joint employer. Counsel then approved the First Amended Complaint in this action that categorically states the opposite. Based on the plain language of the regulations, the other allegations in Alvarado's First Amended Complaint, the Job Order, and previous cases in Nevada district court, the Court should disregard paragraph 132 of the First Amended Complaint, alleging that WRA is not a joint employer.

### 3. **Defendants' Alleged Actions are Also Consistent with the United States Code**

The United States Code expressly permits agricultural associations to file H-2A Applications. "A petition to import an alien as a temporary agricultural worker, and an application for a labor certification with respect to such a worker, may be filed by an association of agricultural producers which use agricultural services." 8 U.S.C. § 1188(d)(1). This is the only authority Alvarado concedes to WRA. *See* ECF 50 ¶ 48. However, as set forth above, it is misleading to allege that the only permissible activity of organizations such as WRA is to "fill out applications on behalf of members". The broader statutory and regulatory framework provide for far greater responsibility and discretion.

Alvarado has thus failed to substantiate the first element of a Sherman Act violation – an agreement, conspiracy, or combination among two or more persons or distinct business entities. As a threshold matter, with respect to Alvarado's allegations, Defendants constitute a single entity lawfully conducting a legitimate purpose. Alvarado's allegations to the contrary are rebutted by the Sherman Act itself, the Job Order, common law, and explicit statutory and regulatory authority. On this basis alone, Alvarado's second claim should be dismissed.

### C. ALVARADO CANNOT DEMONSTRATE AN AGREEMENT TO HARM OR UNREASONABLY RESTRAIN COMPETITION

In addition to failing to allege the first element of a violation of section 1 of the Sherman Act, Alvarado also fails to plausibly allege acts of Defendants intended to harm or unreasonably restrain competition. First, Alvarado alleges that Defendants engaged in lawful activity that is consistent with the H-2A regulations and the United States Code. Second, an accurate depiction of

16

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

the H-2A program demonstrates the inherent limitations it places on the market.  Third, the H-2A program permits applications by associations and joint employers in order to increase competition, and to penalize that competition would defeat the principal aim of the Sherman Act.

### 1.  H-2A Regulations and the United States Code Prescribe Activity

The H-2A regulations and United States Code identify and permit limitations Alvarado alleges Defendants place on sheepherders.[4]  The regulations and code 1) provide that WRA may select a member ranch to receive specific sheepherders; 2) require employers to ensure H-2A workers maintain their intended employment; and 3) provide that Defendants must only make efforts to transfer workers in the event of contract impossibility.  Alvarado's allegations as to his second claim therefore fail to allege an intent by Defendants to harm or unreasonably restrain competition.

WRA may use H-2A certifications "for the certified job opportunities of any of its producer members", which means that WRA may assign sheepherders to specific ranches.  8 U.S.C. § 1188(d)(2).  Consequently, Alvarado's allegations that WRA assigns sheepherders to specific WRA members, including the Ranch Defendants, is expressly permitted pursuant to the applicable statutes.

Alvarado protests that sheepherders "must work exclusively for the [WRA]" during the term of their contracts.  ECF No. 50 ¶ 14.  This, too, is permitted under the U.S.C.  Alvarado and other H-2A sheepherders are non-immigrants permitted to enter the United States to work based on a specialized visa.  The regulations contemplate the completion of the employment term specified in the H-2A Application, subject to certification by the DOL.[5]  In fact, it is a violation of the regulations to permit the employment of "an H-2A worker outside the area of intended employment, in an activity/activities not listed in the job order or outside the validity period of employment of the job

---

[4] In addition to the categories enumerated in this subsection, "H-2A visas can only be granted when there are 'not sufficient workers . . . to perform the labor or services involved . . . .'" *Little*, 297 F.R.D. at 477 (citing 8 U.S.C. § 1188(a)(1)).  The only time the Ranch Defendants can utilize the H-2A program is when the United States federal government finds that there are insufficient domestic workers.

[5] Of note, Defendants may not shorten the work contract period even with the agreement of the sheepherder unless it has approval of the DOL, highlighting the limitations imposed on all parties to the employment agreement under the complex regulatory requirements.  *See* 20 C.F.R. § 655.122(i)(1)(ii).

order, . . ." 20 C.F.R. 655.182(d)(1)(vii). There is no shortcut to new employment in the H-2A program.

If, however, "before the expiration date specified in the work contract, the services of the worker are no long required beyond the control of the employer . . . the employer may terminate the work contract" and "[t]he employer must make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable." 20 C.F.R. § 655.122. This provision – Contract Impossibility – is the only section of the regulations that requires efforts on the part of an employer to transfer the worker to other comparable employment. Alvarado does not allege contract impossibility as part of his claim. Accordingly, Alvarado has not alleged activity in violation of regulatory requirements.

**2. The H-2A Program Itself Creates Limitations on Employers and Employees**

Alvarado's allegations mischaracterize the structure of the H-2A program. The H-2A regulations are not designed for foreign sheepherders to fill out a job and visa application to then be granted access to all available sheepherder jobs in the United States. Instead, H-2A visas are petition-based visas, meaning that a U.S. employer must obtain temporary labor certification from the DOL before a visa appointment may be scheduled for an applicant. The sheepherder must be hired *before* he or she can apply for an H-2A visa. The process is highly regulated, and the result is that Alvarado's allegations are misplaced: Defendants do not have the power or authority to approve visas or job transfers in a manner inconsistent with the H-2A program.

To participate in the H-2A program, ranches such as the Ranch Defendants and entities such as WRA must: i) submit work orders to DOL to be transmitted to state workforce agencies ("SWA") (20 C.F.R. § 655.121), ii) complete a labor certification process with the DOL and have the job order posted by the DOL (20 C.F.R. § 655.100 et seq., *see also* 20 C.F.R. § 655.162), iii) interview applicants, and iv) petition the Department of Homeland Security in advance of sheepherder interviews by the Department of State (8 U.S.C. § 1188(d)(2)). Sheepherders must: 1) review job orders and apply for an approved available job, 2) after receiving a job offer, apply for a visa that is tied to their employment (8 U.S.C. § 1188); and 3) interview for and be approved for the visa. It is only after all these steps are completed that a sheepherder can travel to the United States to work.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

18

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

For a sheepherder to transfer employment, he or she must find a new employer sponsor who has undergone all of these steps and a transfer application must be filed with the Department of Homeland Security.

In addition, H-2A employers must "inform H-2A workers of the requirement that they leave the United States at the end of the period certified by the [DOL] or separation from the employer, whichever is earlier . . . unless the H-2A worker is being sponsored by another subsequent H-2A employer." 20 C.F.R. § 655.135(i). Defendants must inform sheepherders that if they are not completing their duties or the job order period ends, they must leave the United States. Defendants have no discretion in this matter.

Defendants did not create the regulations and the law – they simply abide by them. Moreover, Alvarado's allegations that he was not permitted to transfer to other WRA ranches does not entitle him to relief. As set forth above, Alvarado and other sheepherders are by default not entitled to freely transfer to alternative ranches. Under Alvarado's logic, a non-WRA ranch would retrain trade by not entering into an association that permits transfers. Such a conclusion is clearly untenable. Further, it is not a restraint of trade for a company to deny employee transfer requests to different divisions and different office locations, and that is Alvarado's principal assertion.

### 3.   The Strictures of the H-2A Program Increase Competition

The purpose of the H-2A program is to meet the United States' labor needs. For DOL certification to be issued, it must determine that "[t]here are not sufficient able, willing, and qualified United States workers available to perform the agricultural labor or services of a temporary or seasonal nature . . . ." 20 C.F.R. § 655.100. As Alvarado recognizes, "one of the principal purposes of the WRA is to file with the DOL H-2A applications on behalf of its members." ECF 50 ¶ 82. Additionally, WRA is identified as "'a non-profit member association of ranchers from 13 Western states who help facilitate the employment of H-2A foreign workers for herding or production of livestock on the range.'" *Id.* 57. Accordingly, the H-2A program makes it possible for Defendants to access otherwise unavailable labor, and WRA makes it possible for the Ranch Defendants to utilize the H-2A program.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

Nowhere in the First Amended Complaint does Alvarado allege that the Ranch Defendants could utilize the H-2A program without WRA. Indeed, by his very allegations, they could not. The regulatory complexity of the H-2A program logically prevents access to the foreign labor market to many prospective employers without the assistance of mutual help agricultural organizations such as WRA. To agree with Alvarado that "the WRA has no purpose other than to facilitate collusion between its members in the labor market" (*Id.* ¶ 57) is to adopt an anachronistic analysis firmly rejected by the United States Supreme Court. "In the early 1900's, when agricultural cooperatives were growing in effectiveness, there was widespread concern because the mere organization of farmers for mutual help was often considered to be a violation of the antitrust laws. . . . It was to bar such prosecutions by the Federal Government as to interstate transactions that Congress in 1914 inserted s 6 in the Clayton Act exempting agricultural organizations, along with labor unions, from the antitrust laws." *Maryland and Virginia Milk Producers Ass'n v. U.S.*, 362 U.S. 458, 464, 80 S.Ct. 847, 852 (1960).

Alvarado's rhetoric must be rejected. The alleged actions of Defendants are not collusive, but are instead coordinated activity to expand access to labor in accordance with the law. It is counter to the principal aim of the Sherman Act – to stop conduct which "'deprive(s) * * * rivals of a fair opportunity to compete'" – to prevent ranches from access to labor. *See Brown Shoe Co. v. U.S.*, 370 U.S. 294, 324, 82 S.Ct. 1502, 1523 (1962) (citing H.R.Rep. No. 1191, 81st Cong., 1st Sess. 8). The result would be that only those ranches capable of affording the time and personnel necessary to navigate complex regulatory requirements would survive. By censuring WRA for engaging in lawful activities, Alvarado would ensure the very monopsony he alleges.

Defendants' alleged actions are not intended to harm or unreasonably restrain competition, but to comply with the law. Alvarado has failed to demonstrate the second element of a Sherman Act violation.

### D. ALVARADO HAS NOT SUFFICIENTLY ALLEGED COMPETITIVE INJURY

Alvarado has failed to adequately allege Defendants' actions cause injury to competition, beyond the impact on the claimant, and the allegations are insufficient to substantiate a violation of the Sherman Act. As set forth in Section V(A), WRA members, including the Ranch Defendants

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

are *not* competitors in the foreign labor market, and by the time the Ranch Defendants are contracting with foreign workers for employment, the United States federal government has found the domestic labor market to be insufficient.   As set forth in Section V(C)(3), *supra*, the alleged conduct of Defendants aligns with the H-2A regulations and increases, rather than diminishes, competition. Furthermore, Alvarado fails to make allegations defining the domestic labor market or the foreign labor market, and has thereby failed to state a claim.

The Sherman Act prohibits unreasonable restraints of trade.  "We use two kinds of analysis to determine whether a restraint of trade is unreasonable: the *per se* approach and the rule of reason." *PLS.Com, LLC v. National Association of Realtors*, 32 F.4th 824, 833 (9th Cir. 2022).  The alleged activity of the Ranch Defendants, conducted as part of a complicated regulatory structure, cannot be deemed "so harmful to competition" to "not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133, 119, S.Ct. 493 (1998).  Accordingly, the "rule of reason" (rather than the *per se* approach) must be applied, requiring Alvarado to "prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market."  *PLS.Com, LLC v. National Association of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022) (citing *Ohio v. American Express Company, et al*, 138 S.Ct. 2274 (2018)).  Alvarado's allegations are inadequate.

Alvarado alleges that the "explicit purpose and effect of assigning workers to particular ranches is to make the labor market for their labor non-responsive to competition, and to insulate each WRA member from competition from other WRA members."  ECF 50 ¶ 180.  A "court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Mendoza v. Aurora Loan Servs., LLC*, 2011 WL 2413995, at *2 (D. Nev., Jun. 13, 2011).  Alvarado's allegation is nothing more than a conclusory assertion that is refuted by the Job Order and the regulatory requirements.  To reiterate, "Congress intended to outlaw only *unreasonable* restraints . . . ."  *Texaco Inc. v. Dagher*, 547 U.S. 1, *2, 126 S.Ct. 1276 (2006).  It would be inequitable to determine that by agreeing to engage a mutual help organization, the Ranch Defendants unreasonably retrain trade.

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

In *Texaco*, the United States Supreme Court held that Texaco and Shell oil "did not compete with one another in the relevant market – *i.e.*, gasoline sales to western service stations – but instead participated in that market jointly through Equilon." *Id.* Similarly, according to the Job Order and Alvarado's allegations, Defendants *did not compete with one another in the relevant market* – the foreign labor market – but instead participated in that market jointly through WRA. Alvarado does not allege that Defendants hired a single domestic worker through job orders, and Alvarado is not a domestic worker. As Alvarado has failed to plausibly allege injury to competition in the foreign labor market, his claim is deficient as a matter of law.

In addition to the foregoing, Alvarado fails to acknowledge the existence of the international market for sheepherders. He makes the conclusory allegation that notwithstanding his years of experience "he had no opportunity to shop between ranches for decent wage." ECF 50 ¶ 19. This allegation is facially implausible as Alvarado also alleges that wages outside the WRA's region of influence are paid more. *Id.* ¶¶ 114-15. Additionally, Alvarado is summarily concluding that the only labor market for sheepherders internationally is the H-2A program in the United States. That conclusion is beyond implausible – it is inconceivable. Alvarado had the opportunity to shop between ranches *before* he chose to work for the Little Ranch, but his claims are based on his inability to shop between ranches *after* he agreed to work for Little Ranch, *after* he chose to participate in the H-2A program and *after* he was granted a visa. At that point, Alvarado's options were limited, not by the Ranch Defendants, but by the specific requirements of the H-2A program.

**E.  ALVARADO'S ALLEGATIONS ARE DEFICIENT**

As stated in Section II, *supra*, Alvarado's allegations fall into three categories: (1) allegations that accurately describe procedures followed by Defendants, as required by federal law; (2) allegations that are demonstrably false based on documents incorporated into the First Amended Complaint by reference; and (3) allegations that are no more than threadbare recitals and conclusory assertions. In paragraphs 133 through 137 of the First Amended Complaint, Alvarado alleges a conspiracy beyond what is permitted by federal law and beyond what is set forth in the Job Order. However, Alvarado's allegations as to this conspiracy are i) threadbare and conclusory, ii) all five

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

1    of those paragraphs are alleged on information and belief; and iii) none of the paragraphs allege

2    specific acts of the Ranch Defendants.

3           "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4    statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Alvarado's allegations in paragraphs 133

5    through 137 constitute no more than threadbare recitals of the elements of a conspiracy, "requiring

6    the reviewing court to draw on its experience and common sense." *Id.* at 663-64.  Throughout the

7    First Amended Complaint, Alvarado wrongfully equates lawful activity with conspiratorial conduct.

8    Common sense dictates that the Court should not use specific allegations of lawful activity to make

9    an unwarranted logical leap that general and conclusory allegations of conspiracy are plausible.  For

10   example, WRA is permitted to file H-2A Applications and assign sheepherders to members.  It does

11   not logically follow that "WRA members agree not to poach employees from one another, even

12   beyond the prohibition mentioned above and after sheepherders' visa terms expire." ECF 50 ¶ 133.

13   Alvarado's allegations as to the unlawful conspiracy are conclusory and implausible, and do not

14   suffice to state a claim.

15          All five of paragraphs 133 through 137 are made on information and belief.  "On information

16   and belief" means "based on secondhand information that the declarant believes to be true."

17   Black's Law Dictionary (11th ed. 2019).  These allegations are insufficient to support Alvarado's

18   claim of horizontal market allocation.  To "allege an agreement between antitrust co-conspirators,

19   the complaint must allege facts such as a 'specific time, place, or person involved in the alleged

20   conspiracies' . . ." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting

21   *Twombly*, 550 U.S. at 656 n.10).  Alvarado's conclusory allegations, made on information and belief,

22   fail to provide these details.  "[W]here the well-pleaded facts do not permit the court to infer more

23   than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – 'that

24   the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing FRCP 8(a)(2)).  Alvarado has done

25   no more than permit the Court to infer the possibility of misconduct.  In light of Alvarado's other

26   assertions – belied by the plain language of the regulations and the Job Order – the allegations related

27   to Alvarado's second claim are insufficient.

28

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

## VI.    <u>CONCLUSION</u>

The Sherman Act does not forbid the existence of nonprofit agricultural organizations, such as WRA, instituted for the purpose of *helping* ranches access the exceedingly complex and expensive regulatory framework to access sources of foreign labor when the domestic market is insufficient. That is, in a nutshell, what WRA is *and* why the H-2A program itself was created. Logically, it cannot make sense that by engaging WRA as a joint employer to access foreign labor, the Ranch Defendants have violated antitrust laws.   If organizations such as WRA did not exist, then agricultural companies such as the Ranch Defendants would not be able to access foreign labor, and they would cease to exist, based on the lack of domestic market for sheepherders.   Nowhere in Alvarado's First Amended Complaint does he allege that there is a sufficient market of domestic sheepherders to sustain sheep ranches in the United States.[6]   Ironically, Alvarado's claim, if successful, would *promote* monopsony by eliminating entities, such as the Ranch Defendants, from the sheepherding market.   Only those buyers with enough resources to individually afford the personnel to navigate the regulatory complexities of the H-2A program would survive.   Accordingly, from a common-sense perspective, Alvarado cannot prevail against the Ranch Defendants, and the Motion should be granted.

For the foregoing reasons, the Ranch Defendants respectfully submit that Alvarado's First Amended Complaint should be dismissed.

DATED this 14th day of August, 2023.

---

[6] He cannot.  The Department of Labor permits H-2A employment because of this irrefutable fact.  *See* 8 U.S.C. § 1188(a)(1) (stating that H-2A visas can only be granted when there are "not sufficient workers . . . to perform the labor or services involved").

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

1

### PROOF OF SERVICE VIA ELECTRONIC SERVICE

2

I, Kelly Lee, declare:

3

I am employed in the City of Reno, County of Washoe, State of Nevada by the law offices of Simons Hall Johnston PC. My business address is 690 Sierra Rose Drive, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

4

5

On August 14, 2023, I served the foregoing **MOTION TO DISMISS** by causing the document to be served via electronic service through the Court's CM ECF electronic filing system, addressed as follows:

6

| | |
|---|---|
| **THIERMAN BUCK LLP**<br>LEAH L. JONES, ESQ<br>Nev. Bar No. 13161<br>leah@thiermanbuck.com<br>7287 Lakeside Drive<br>Reno, Nevada 89511<br>Telephone: (775) 284-1500<br>Facsimile: (775) 703-5027<br><br>**WESTERN RANGE ASSOCIATION**<br>Ellen Jean Winograd<br>Woodburn and Wedge<br>6100 Neil Road, Suite 500<br>Reno, NV 89511<br>775-688-3000<br>775-688-3088 (fax)<br>ewinograd@woodburnandwedge.com | **TOWARDS JUSTICE**<br>DAVID H. SELIGMAN, ESQ. (Pro Hac Vice)<br>NATASHA VITERI, ESQ. (Pro Hac Vice)<br>ALEXANDER HOOD, ESQ. (Pro Hac Vice)<br>jamie@fairmarklaw.com<br>david@towardsjustice.org<br>natasha@towardsjustice.org<br>alex@towardsjustice.org<br>leah@thiermanbuck.com<br>ysalahi@edelson.com<br>aisha@fairmarklaw.com<br>laborlawyer@pacbell.net<br>joshh@thiermanbuck.com<br><br>**EDELSON PC**<br>David Sexton<br>Fabian VanCott<br>411 East Bonneville Avenue<br>Suite 400<br>Las Vegas, NV 89101<br>702-233-4444<br>dsexton@fabianvancott.com |
| **FAIRMARK PARTNERS, LLP**<br>JAMIE CROOKS, ESQ. (Pro Hac Vice)<br>jamie@fairmarklaw.com<br>1825 7th St NW, #821<br>Washington, DC 20001<br>**F.I.M. CORP.**<br>**FAULKNER LAND AND LIVESTOCK COMPANY, INC.**<br>**NEED MORE SHEEP CO., LLC**<br>Jerry M Snyder<br>Jerry Snyder Law<br>429 W. Plumb Lane<br>jerry@jerrysnyderlaw.com | **EDELSON PC**<br>Natasha Fernández-Silber (Pro Hac Vice forthcoming)*<br>nfernandezsilber@edelson.com<br>350 N La Salle Dr., 14th Floor<br>Chicago, IL 60654<br>Tel: 312-589-6370<br>* Admitted in New York and Michigan<br>Attorneys for Plaintiff and the Putative Class |

I declare under penalty of perjury under the laws of the United States that the foregoing is

25

true and correct, and that this declaration was executed on August 14, 2023.

/s/ Kelly Lee

Employee of Simons Hall Johnston PC

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

26