**THIERMAN BUCK LLP**
LEAH L. JONES, Nev. Bar No. 13161
leah@thiermanbuck.com
7287 Lakeside Drive
Reno, Nevada 89511
Telephone: (775) 284-1500
Facsimile: (775) 703-5027

**FAIRMARK PARTNERS, LLP**
JAMIE CROOKS, ESQ. (Pro Hac Vice)
jamie@fairmarklaw.com
1825 7th Street NW, #821
Washington, D.C. 20001

**EDELSON PC**
YAMAN SALAHI, ESQ. (Pro Hac Vice)
ysalahi@edelson.com
150 California Street, 18th Floor
San Francisco, California 94111
Telephone: (415) 212-9300

**EDELSON PC**
NATASHA FERNÁNDEZ-SILBER, ESQ.
(Pro Hac Vice)*
nfernandezsilber@edelson.com
350 North LaSalle Drive, 14th Floor
Chicago, Illinois 60654
Telephone: (312) 589-6370
* Admitted in New York and Michigan

**TOWARDS JUSTICE**
DAVID H. SELIGMAN, ESQ. (Pro Hac Vice)
david@towardsjustice.org
ALEXANDER HOOD, ESQ. (Pro Hac Vice)
alex@towardsjustice.org
PO Box 371680, PMB 44465
Denver, Colorado 80237

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CIRILO UCHARIMA ALVARADO, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WESTERN RANGE ASSOCIATION, a California non-profit corporation; ELLISON RANCHING COMPANY, a Nevada corporation; JOHN ESPIL SHEEP CO., INC., a Nevada corporation; F.I.M. CORP., a Nevada corporation; THE LITTLE PARIS SHEEP COMPANY, LLC, a Nevada limited liability company; BORDA LAND & SHEEP COMPANY, LLC, a Nevada limited liability company; HOLLAND RANCH, LLC, a Nevada limited liability company; NEED MORE SHEEP CO., LLC, a Nevada limited liability company; and FAULKNER LAND AND LIVESTOCK COMPANY, INC., an Idaho corporation.<br><br>Defendants. | Case No.: 3:22-cv-00249-MMD-CLB<br><br>**STIPULATED [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |

1. **PURPOSE**

This Order will govern production of ESI and Documents (as defined below) by Plaintiff and Defendants (the "Parties") as a supplement to the Federal Rules of Civil Procedure and other applicable orders and rules in the above-captioned proceeding (the "Litigation"). The Parties reserve all objections under the Federal Rules of Civil Procedure and other applicable authority concerning matters that are addressed in this Order.

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity; however, any relevant Documents that are subject to privilege shall be identified in a privilege log as described in section (8) below. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of Documents or ESI. Nothing in this Order shall be interpreted to supersede the provisions of orders governing confidentiality, privilege, and/or protected information entered by the Court in this Litigation, unless expressly provided for in such an order.

2. **DEFINITIONS**

"**Confidentiality Designation**" means the legend affixed to Documents or ESI (or the accompanying Documents/response) for confidential or highly confidential information as defined by, and subject to, the terms of any order concerning confidentiality agreed to and/or entered by the Court in this Litigation.

"**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

"**Electronic Document or Data**" means Documents or data existing in electronic form at the time of collection, including but not limited to e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

"**Electronically stored information**" or "**ESI,**" as used herein, has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes Electronic Documents or Data, and computer-generated information or data, stored in or on any storage media located on

computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media in the Parties' possession, custody or control that is reasonably accessible, including any Cloud or off-site storage.

"**Load file[s]**" means an electronic file containing information identifying a set of electronic Documents containing metadata, as well as information indicating unitization used to load that production set into a document review platform.

"**Metadata**" means: (i) information embedded in or associated with a native file that describes the characteristics, origins, usage, and/or validity of the electronic file, which may include, but is not limited to: author, custodian, subject, to, from, date, and other fields, which may vary depending on the nature of the file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Nothing in this Order shall require any Party to manually populate the value for any metadata field, with the exception of hard copy Documents laid out in Section 6, Paragraph a.

"**Native Format**" or "**Native File**" means the format of ESI in which it was generated and/or used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

**3.    PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. Any Party that imposes limitations on the materials to be preserved, whether based on date, custodian, document type, etc., shall identify those limitations to the other Parties to facilitate meet-and-confer. The Parties retain the right to take disputes concerning their preservation obligations to the Court if disagreements cannot be resolved through the meet-and-confer process.

**4.     LIAISON**

Each party shall de-duplicate ESI during processing if it uses a processing tool that offers de-duplication. Duplicates are defined as Documents that have identical digital fingerprints, such as the Document's MD5 or SHA1 hash value.

**5.     IDENTIFICATION AND COLLECTION OF ESI**

a. Sources, Search Methods, and Timing.  The Parties shall meet and confer in good faith in an effort to agree upon: (a) sources from which Documents and ESI will be collected for review and production; (b) search methods and terms or other filtering or categorization to be applied; and (c) timeframes for collection and review of Documents and ESI.  These discussions should begin no later than promptly after service of objections to requests for production and should continue as necessary to address issues that arise in the course of discovery.  If good faith negotiations do not resolve all ESI questions, the Parties will bring any remaining disputes to the Court for resolution.

b. Technologies. To the extent a Party chooses to search and review using a technology or methodology other than search terms (including, for instance, predictive coding), that Party shall disclose its intent to use that technology and the name of the review tool.  In the event a Party chooses to utilize predicted coding or other technology assisted review (TAR), the Parties will meet and confer regarding precision and recall standards.

**6.     PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS**

a. Hard Copy Documents. Hard copy Documents shall be digitally imaged for production, with each individual Document separately scanned prior to being produced. The Parties shall produce all hard copy Documents as they were kept in the ordinary course of business, maintaining to the greatest extent practicable their organization, folder structure, sequencing, etc. as the Documents are digitally imaged for production.  The Parties will provide searchable OCR ("optical character recognition") text of any paper or imaged Documents to the extent reasonably practical, unless the Party reasonably determines that the utility of the OCR is outweighed by the expense. In that case, the Producing Party will produce the Documents as they are kept in the ordinary course of business and include in such production an explanation to the Requesting Party why

production in OCR format is not feasible. No OCR or explanation for a lack of OCR shall be required for hand-written Documents, or other Documents to which OCR software does not, in a reasonably easy manner, convert to OCR format. The Documents should be Bates labeled and produced with at least the following information: (1) FirstBates; (2) LastBates; and, if the custodian is different from the Defendants in this case, (3) Custodian. Custodians should be identified using the convention "last name_first name", or, if an entity, the entity name. A Producing Party shall use a uniform description of a particular custodian across productions. The custodian information, if required by this Paragraph, shall be provided in an excel spreadsheet with three columns: (1) FirstBates; (2) LastBates; and (3) Custodian. The Parties shall meet and confer in the event there is a particularly large production of Documents.

b. Native Format of Electronic Documents. The Parties shall produce all spreadsheets, computer slide presentations, audio files, video files, structured data, databases, and other file types in the native format in which they were kept in the ordinary course of business, provided, however, that the Parties will meet and confer regarding appropriate format of production for any Documents that need specialized software to make accessible. When the native file is produced, the Producing Party shall preserve the integrity of the electronic Document's contents, i.e., its original formatting and metadata.

c. Load Files. Where the Requesting Party can establish that the need, as compared to the relative cost and burden on the Producing Party, justifies the creation of a Load File, then the Parties will meet and confer regarding the Requesting Party's specifications. The Parties may also meet and confer regarding cost shifting of the costs of creating the Load File in order to balance the relative needs and burdens related to any particular request.

d. Confidentiality Designation. To designate Documents or ESI as confidential under a protective order that the Parties have filed with the court, the producing Party shall follow the provisions set forth in Paragraph 17 of the Stipulated Protective Order (ECF No. 113). A Producing Party may also designate a native file as Confidential by inserting the word "Confidential" in the file name and/or by indicating the Confidentiality status in metadata provided

with an accompanying load file. Designation shall be in a conspicuous, nonobstructive location on the face of a Document, file name of the Document, or the accompanying Documents/response.

  e. Bates Numbering. Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source Document. The Bates Number for each page of each Document will be created to identify the Producing Party. In the case of materials redacted or deemed confidential, a redaction or confidentiality designation may be "burned" onto the Document's image. The confidentiality designation will be "burned" onto the Document at a location that does not obliterate, conceal, or interfere with any information from the source Document. The Bates designation shall use an alphanumerical prefix that may or may not have special characters and a numerical page reference that shall not include anything but numbers. An acceptable example would be: "Example_0000001." Should a Party's Vendor or Review Platform have other requirements, Parties will meet and confer in good faith.

  f. Redactions. Any redactions shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction, or, alternatively, the Parties may provide a separate log (or included in the Privilege Log).

  The Parties agree that they may redact Documents for sensitive personally identifiable information, such as social security numbers or bank account numbers, or a jurisdictionally recognized privilege. Other redactions shall be agreed upon by the Parties.

  g. Deviation from Production Specifications. If a particular Document or category of Documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

7.  PRIVILEGE LOGS

  a. General Requirement. Except as otherwise provided in this Section, a Producing Party shall provide a log or logs of Documents the Producing Party has withheld from Production or produced from disclosure under the attorney-client privilege, the work-product immunity, spousal

privilege, or any other applicable privilege. The Producing Party shall provide a Privilege Log within thirty (30) days of production.

b. Materials that Need Not Be Logged. Despite the foregoing, the following materials presumptively need not be logged:

i. Communications on or after the date that the Producing Party first filed or was served with a complaint in the Litigation exclusively within a law firm, between a law firm and the Party, or exclusively between or among law firms, serving as the Party's outside counsel of record, as well as their employees and support staff;

ii. Attorney work product created by a Party's outside counsel on or after the date that the Producing Party first filed or was served with a complaint in the Litigation.

c. Format. The Parties will endeavor to provide a privilege log in Excel format of any Documents withheld in whole or in part (i.e., redacted) based upon a claim of privilege within thirty (30) days after production. The Parties further agree to meet and confer regarding the production of a privilege log prior to any deposition(s) as necessary. For each Document withheld or redacted, the privilege log shall contain the following information:

i. A fixed sequential index/reference number, the sequence of which shall continue in subsequent logs;

ii. Bates number of Documents withheld in part (i.e., redacted);

iii. The Document type (e.g., email, Word document, hard copy, etc.) and for any Documents that include attachments, an indication that the Document has attachments;

iv. If the Document is an email:

a. The subject of the e-mail, to the extent it is not privileged;

b. The sent date and time of the email (populated with metadata extracted from the "Date" and "Time" fields);

c. The sender (populated with metadata extracted from the "Email From"

        field); and

    d. The recipients (populated with separate columns with metadata extracted from each of the "Email To," the "Email CC" and "Email BCC" fields).

  v. For loose ESI or hard copy Documents (if known):

    a. The author of the Document;

    b. The date of the Document;

    c. The filename of the Document (if applicable);

    d. The custodian of the Document, and if no custodian can be identified the location the Document was found.

  vi. A notation identifying any legal personnel (and their affiliation to the extent they are not in-house counsel);

  vii. A description of the Document sufficient to allow the Requesting Party to understand the subject matter of the Document and the basis of the claim of privilege or protection; and

  viii. The basis of the privilege claimed.

## 9. THIRD-PARTY DOCUMENTS AND ESI

A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and the protective order entered in this Litigation with the subpoena and state that the Parties in the Litigation have requested that third parties produce Documents in accordance with the specifications set forth therein.

## 10. MODIFICATION

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| Dated: November 20, 2023 | Dated: November 20, 2023 |
| **EDELSON PC** | **WOODBURN AND WEDGE** |
| /s/ Yaman Salahi<br>YAMAN SALAHI, ESQ.<br>150 California Street, 18th Floor<br>San Francisco, CA 94111 | /s/ Ellen Jean Winograd<br>ELLEN JEAN WINOGRAD<br>6100 Neil Road, Ste. 500<br>Reno, NV 89511 |
| /s/ Natasha Fernández-Silber<br>NATASHA FERNÁNDEZ-SILBER, ESQ.<br>350 North LaSalle Drive, 14th Floor<br>Chicago, IL 60654 | *Counsel for Defendant<br>Western Range Association* |
| *Counsel for Plaintiff and the Putative Class* | |
| **SIMONS HALL JOHNSTON, P.C.** | **JERRY SNYDER LAW** |
| /s/ Anthony Hall<br>ANTHONY HALL, ESQ.<br>JONATHAN MCGUIRE, ESQ.<br>DUNCAN BURKE, ESQ.<br>Attorneys for Defendants<br>Borda Land & Sheep Company, LLC,<br>The Little Paris Sheep Company, LLC; John Espil Sheep Co., Inc., and Holland Ranch, LLC | /s/ Jerry Snyder<br>JERRY SNYDER, ESQ.<br>Attorney for Defendants<br>F.I.M. Corp.; Need More Sheep Co. LLC;<br>Faulkner Land and Livestock Company, Inc. |
| **FABIAN VANCOTT** | |
| /s/ Trevor Waite<br>TREVOR WAITE, ESQ.<br>KIRSTEN ALLEN, ESQ.<br>TANNER BEAN, ESQ.<br>SCOTT PETERSEN, ESQ.<br>Attorneys for Defendant Ellison Ranch | |

### [PROPOSED] ORDER

**IT IS SO ORDERED.**

Dated this ____ day of _____ 2023.

_____
U.S. District/Magistrate Judge