UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CIRILO UCHARIMA ALVARADO,<br><br>Plaintiff,<br>v.<br><br>WESTERN RANGE ASSOCIATION, *et al.*,<br><br>Defendants. | Case No. 3:22-cv-00249-MMD-CLB<br><br>ORDER |

## I.     SUMMARY

Plaintiff Cirilo Ucharima Alvarado, on behalf of himself and all others similarly situated, alleges that Defendants Western Range Association ("WRA") and eight individual WRA member ranches[1] (collectively, "Ranch Defendants") unlawfully restrained trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.* ("Sherman Act"). (ECF No. 50 ("First Amended Complaint" or "FAC").) Before the Court are Ranch Defendants' motions to dismiss the FAC (ECF Nos. 96, 99, 109),[2]

---

[1] Those Defendants are Borda Land & Sheep Company, LLC, Ellison Ranching Company, Faulkner Land and Livestock Company, Inc., F.I.M. Corp., Holland Ranch, LLC, John Espil Sheep Co., Inc., Little Paris Sheep Company, LLC ("Little Ranch"), and Need More Sheep Co., LLC.

[2] Faulkner, F.I.M., and Need More Sheep jointly filed a motion to dismiss (ECF No. 96). Ellison filed a motion to dismiss (ECF No. 99). Borda, Holland, John Espil, and Little Ranch jointly filed a motion to dismiss (ECF No. 109).

Ellison joined Borda, Holland, John Espil, and Little Ranch's motion to dismiss. (ECF No. 117.) WRA joined Ellison's motion to dismiss and Borda, Holland, John Espil, and Little Ranch's motion to dismiss. (ECF Nos. 119, 120.)

Ellison requested oral argument (ECF No. 99 at 1), but the Court determined that a hearing was not necessary to resolve its motion. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing.").

With leave from the Court (ECF No. 116), Plaintiff responded to all three motions to dismiss in a single consolidated opposition brief (ECF No. 125). Ranch Defendants replied. (ECF Nos. 130, 133, 134.)

Ellison's motion to strike under Federal Rule of Civil Procedure 12(f) (ECF No. 100),[3] Ellison's motion to seal a reply exhibit (ECF No. 131),[4] Plaintiff's motion to strike Ellison's new reply arguments (ECF No. 141),[5] and Ellison's motion for leave to file a supplemental brief (ECF No. 161).[6]

As further explained below, the Court will grant Ranch Defendants' motions to dismiss on the basis that Plaintiff has not sufficiently alleged that each Ranch Defendant specifically assented to the alleged anti-competitive agreements, but the Court will grant Plaintiff leave to amend. The Court also denies Ellison's Rule 12(f) motion to strike, grants Ellison's motion to seal, grants Plaintiff's motion to strike new reply arguments, and denies Ellison's motion for leave to file a supplemental brief.

## II. BACKGROUND

In Plaintiff's original complaint, he sued only WRA. (ECF No. 1.) WRA moved to dismiss that complaint (ECF No. 23), and the Court denied the motion to dismiss, finding that Plaintiff plausibly alleged that WRA made an unlawful wage-fixing agreement with its members (ECF No. 43). Plaintiff subsequently filed the FAC, which alleges the same facts as the original complaint but adds eight WRA member ranches as named defendants. (ECF No. 125 at 8; *compare* ECF No. 1 *with* ECF No. 50.) Ranch Defendants now move to dismiss the FAC.

The following allegations are adapted from the FAC. WRA is an association made up of member sheep ranches located in various states in the Western United States. (ECF No. 50 at 13.) Ranch Defendants are members of the WRA and are all based in Nevada,

---

[3]Plaintiff responded (ECF No. 121), and Ellison replied (ECF No. 129). All other Ranch Defendants joined Ellison's motion to strike (ECF Nos. 123, 124), and WRA filed a notice of non-opposition to the motion (ECF No. 118).

[4]Plaintiff did not respond, and the deadline to do so has passed. Under LR 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." The Court therefore grants Ellison's motion to seal a reply exhibit as unopposed.

[5]Ellison responded (ECF No. 146), and Plaintiff replied (ECF No. 150).

[6]Plaintiff responded (ECF No. 162), and Ellison replied (ECF No. 163).

2

except for Faulkner, which is based in Idaho. (*Id.* at 7-8.) Plaintiff is a Peruvian citizen who came to the United States on a temporary H-2A visa to work as a sheepherder on Little Ranch in Nevada from July 2020 to December 2020. (*Id.* at 6.) Plaintiff seeks to represent a class of "all persons who worked as a sheepherder for the WRA or any of the member ranchers of the WRA through the H-2A visa program at any time on or after June 1, 2018." (*Id.* at 32.)

The H-2A visa program is an agricultural guest worker visa program administered by the Department of Labor ("DOL") that issues work visas to foreign workers to fill positions that employers cannot fill through the domestic labor market. (*Id.* at 8.) DOL regulations require that employers offer domestic workers "no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers." (*Id.* at 9.) The DOL has implemented "special procedures" governing the monthly wage floor for H-2A sheepherders. (*Id.* at 10.) This wage floor can be higher in individual states based on higher state-level minimum wage laws. (*Id.*) DOL's regulations allow membership organizations to fill out applications on behalf of their members. (*Id.* at 11.) On behalf of its members, WRA creates job orders for domestic sheepherders and files H-2A applications for foreign sheepherders. (*Id.* at 18, 21.)

Plaintiff alleges that WRA and its members, including Ranch Defendants, conspired and agreed to fix the wages offered to both domestic and foreign sheepherders at or near the wage floor set by DOL for H-2A sheepherders. (*Id.* at 34.) Plaintiff alleges that WRA instructs its members that they will all pay the minimum allowable wage, and WRA members agree to offer and pay that wage. (*Id.* at 23.)

Plaintiff also alleges that WRA horizontally allocates the market for foreign H-2A sheepherders among its members by assigning them to ranches and not allowing them to seek employment elsewhere and that WRA members agree not to poach employees from one another. (*Id.* at 29-30.) Plaintiff alleges that WRA and its members, including Ranch Defendants, "conspired and agreed to avoid competing for labor, coercing sheepherders into agreements which remove sheepherders' ability to negotiate for better

wages or wages commensurate with their experience, or to seek employment at other ranches." (*Id.* at 36.)

Plaintiff asserts two violations of Section 1 of the Sherman Act based on: (1) horizontal wage-fixing agreement; and (2) horizontal market allocation. (*Id.* at 33, 35.)

## III. DISCUSSION

Defendants move to dismiss both of Plaintiff's claims. The Court first addresses whether the Court has personal jurisdiction over Faulker, then addresses Ellison's and Plaintiff's respective motions to strike and Ellison's motion for leave to file a supplemental brief. The Court lastly addresses whether Plaintiff has plausibly stated claims under the Sherman Act.

### A. Personal Jurisdiction Over Faulker

Faulkner argues that it should be dismissed under Rule 12(b)(2) because it is not subject to personal jurisdiction in Nevada, as its H-2A workers only pass through Nevada incidentally when accompanying a truck of sheep from Idaho to Arizona or vice versa two times per year. (ECF No. 96 at 8, 10; ECF No. 134 at 5.) Plaintiff counters that the Court has personal jurisdiction over Faulkner because Faulkner "transacts business" in Nevada within the meaning of the Clayton Act. (ECF No. 125 at 35-37.) Faulkner does not appear to dispute that the Clayton Act governs the personal jurisdiction analysis in the antitrust context but does dispute that its activities in Nevada constitute "transacting business" under the Clayton Act. (ECF No. 134 at 5-6.)

Under the Clayton Act, "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. The parties' arguments regarding whether Faulkner "transacts business" in Nevada go directly toward the issue of venue, not personal jurisdiction. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 408-09 (2017) ("Congress generally uses the expression, where suit 'may be brought,' to indicate the federal districts

in which venue is proper. . . . In contrast, Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process."); *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 953 (9th Cir. 1968) (discussing the meaning of "transacts business" within an antitrust venue analysis). Accordingly, these arguments are not on point for Faulkner's clear personal jurisdiction challenge. (ECF No. 96 at 8.)

"The exercise of personal jurisdiction must 'accord with constitutional principles of due process.'" *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (internal citation omitted). "[D]ue process is satisfied when the forum [ ] has 'minimum contacts' with a defendant." *Id.* (citation omitted). In addition to arguing that Faulker transacts business in Nevada, Plaintiff argues that the Court has personal jurisdiction because Faulkner has sufficient minimum contacts with the United States. (ECF No. 125 at 37.) The Court finds that this is the appropriate personal jurisdiction analysis for antitrust claims because the Clayton Act is a federal statute that authorizes nationwide service of process. *See Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414 (9th Cir. 1989) ("[T]here is no dispute that [the Clayton Act] authorizes nationwide service."). And "when a statute authorizes nationwide service of process, [a] national contacts analysis is appropriate." *Id.* at 1416.

Therefore, for an antitrust suit, "the relevant forum with which a defendant must have 'minimum contacts' [for personal jurisdiction purposes] is the United States." *Action Embroidery*, 368 F.3d at 1180. "[T]he inquiry to determine 'minimum contacts' is thus 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'" *Id.* (quoting *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)). Here, Faulkner admits that it is an Idaho corporation that operates in Idaho and Arizona (ECF No. 96 at 3), and therefore, it has clearly had such minimum contacts with the United States. *See Action Embroidery*, 368 F.3d at 1180 (finding that a Virginia law firm operating in the United States had sufficient minimum contacts with the United States to be subject to personal jurisdiction in antitrust action brought against it in California). Accordingly, the Court finds that constitutional

5

principles of due process are satisfied, and personal jurisdiction over Plaintiff's antitrust claims against Faulker is proper. The corresponding motion to dismiss is denied as to Faulker's personal jurisdiction arguments.

### B. Ellison's Rule 12(f) Motion to Strike

Under Rule 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to avoid "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). But "[a] Rule 12(f) motion to strike is an extreme and drastic remedy" and "is generally disfavored." *Kennedy v. Las Vegas Sands Corp.*, Case No. 2:17-cv-00880-JCM-VCF, 2017 WL 4227941, at *2 (D. Nev. Sept. 22, 2017). "A federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Ollier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1223 (S.D. Cal. 2010), *aff'd*, 768 F.3d 843 (9th Cir. 2014).

Ellison moves to strike specific paragraphs and sentences of the FAC for purportedly including impertinent, immaterial, and scandalous allegations regarding WRA and Ranch Defendants' alleged conduct: (1) paragraph 142, which alleges that WRA's members exert control over foreign sheepherders—including through "attempts to prevent 'runaways,'" that "such rhetoric and tactics are reminiscent of the fugitive slave laws," and that "the WRA and its members' ability to implement this exploitative and racist wage-fixing scheme is a function of their collective monopsony power over the labor market for sheepherders"; (2) the allegation in paragraph 53 that WRA and its members' conduct "left [Plaintiff] indentured . . . ."; and (3) allegations in paragraphs 7, 20, 21, 50, and 52 regarding the abhorrent working conditions that Plaintiff allegedly experienced. (ECF No. 100 at 2-3; ECF No. 50 at 12, 31.)

Ellison argues that such "references to slavery, racism, indentured servitude, and poor working conditions" are baseless, not relevant or necessary to any elements of the antitrust claims, and included to cast Defendants in a "cruel and derogatory light." (ECF No. 100 at 4.) Plaintiff counters that Ellison cannot strike allegations based on disagreement alone, the allegations are relevant, and they do not rise to the level of scandalous language. (ECF No. 121 at 8-13.) As explained below, the Court agrees with Plaintiff.

First, to the extent Ellison argues that the identified allegations are "unfounded" or "baseless," that argument is unpersuasive because "Rule 12(f) is not . . . 'an appropriate avenue to challenge the truth of an allegation.'" *See Novva Ausrustung Grp., Inc. v. Kajioka*, Case No. 2:17-cv-01293-RFB-VCF, 2017 WL 2990850, at *2 (D. Nev. July 13, 2017) (citations omitted).

Second, the Court finds that each set of the challenged allegations are not immaterial or impertinent. Immaterial matters are those which have "no essential or important relationship to the claim for relief or the defenses being pleaded," and impertinent matters are "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy*, 984 F.2d at 1527 (citations omitted). As to paragraph 142, Plaintiff specifically cites to an alleged June 2014 blog post on WRA's website about "Herder Runaways" as an example of the rhetoric and tactics used to exert control over foreign sheepherders. (ECF No. 50 at 31.) These allegations call out WRA's alleged use of the term "runaways" to refer to sheepherders who try to leave their workplace and its attempts—in its own words—to "locate and deport" such sheepherders and "penalize those that assisted contract breakers in finding employment." (*Id.*) Such allegations are pertinent and related to the claims at issue, as they support the plausibility of Plaintiff's allegations of a no-poach agreement between WRA and its members.

As for the allegation in paragraph 53, Ellison focuses on the word "indentured," but the whole relevant sentence alleges that "the structure of the sheepherder labor market, shaped by the WRA-led collusion between WRA members, left [Plaintiff] indentured and

vulnerable to abuse at the hands of employers who paid him substantially less than minimum wage, and far less tha[n] he would have been paid in the absence of the anticompetitive scheme alleged herein." (*Id.* at 12.) Plaintiff points out that the dictionary definition of "indentured" is "required by contract to work for another for a certain period of time."[7] (ECF No. 121 at 12.) The Court finds that this allegation and the identified allegations regarding Plaintiff's allegedly abhorrent working conditions are not immaterial or impertinent because they constitute relevant "background information" that is "helpful to explaining the relationships between the parties" and tend to show the consequences and plausibility of a wage-fixing or no-poach conspiracy. *See Americanwest Bank v. Banc of California*, Case No. SA CV 13-1914 DOC, 2014 WL 1347166, at *5 (C.D. Cal. Apr. 4, 2014) (citations omitted).

Third, the Court finds that the challenged allegations do not rise to the level of "scandalous" language under Rule 12(f). "To be 'scandalous' under Rule 12(f) an allegation must 'reflect cruelly upon the defendant's moral character, use repulsive language or detract from the dignity of the court or be relevant, degrading charges that have gone into unnecessary detail.'" *Flynn v. Love*, Case No. 3:19-cv-00239-MMD-CLB, 2020 WL 5607652, at *2 (D. Nev. Sept. 18, 2020) (internal quotation marks and citation omitted). "It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2024). Here, the one-time comparison to "fugitive slave laws" of WRA's alleged rhetoric and tactics around locating "runaways," the one-time description of the alleged wage-fixing scheme as "exploitative and racist," the one-time use of the term "indentured," and the references to dire working conditions are certainly unflattering towards Defendants, but they are not inconsistent with the allegations as a whole and certainly "describe acts

---

[7] Ellison argues that Plaintiff "ignores the highly prejudicial connotation that word has with slavery." (ECF No. 129 at 5.) This goes towards whether such language is sufficiently "scandalous" to be stricken under Rule 12(f). As discussed below, such a reference or connotation within the context of the FAC here is not so outrageous or irrelevant to warrant striking.

or events that are relevant to the action" as discussed above. Moreover, these references are minimal and have not "gone into unnecessary detail."[8] *See Flynn*, 2020 WL 5607652, at *2.

Accordingly, the Court finds that Ellison does not meet the high bar of Rule 12(f) and denies Ellison's motion to strike.

### C. Plaintiff's Motion to Strike

Plaintiff moves the Court to strike Ellison's new arguments in its reply that the Court should incorporate by reference and consider attached exhibits of former WRA executive director Dennis Richins's 2021 deposition testimony (ECF No. 130-1) and a "WRA New Member Packet" (ECF Nos. 130-2, 132 (sealed)). (ECF No. 141 at 2.) In the alternative, Plaintiff moves for leave to file a sur-reply to respond to those arguments. (*Id.*) Ellison counters that such arguments and exhibits are not "new" because they are "discussed in, central to, and relied upon" in the Court's order granting WRA's motion to dismiss, the FAC, Ellison's motion to dismiss, and Plaintiff's opposition. (ECF No. 146 at 4.)

The Court disagrees with Ellison and finds that Ellison's incorporation by reference arguments and accompanying exhibits are new, as they were raised for the first time in its reply. (*Compare* ECF No. 99 *with* ECF No. 130.) Plaintiff's *allegations* of Richins's testimony and the WRA handbook have been discussed by the Court and the parties, but nowhere in its opening brief does Ellison argue that the incorporation by reference doctrine applies nor did Ellison submit the corresponding exhibits until it filed its reply. Because Ellison raised these arguments and exhibits for the first time in its reply, the

---

[8]Ellison analogizes to *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996), where the court struck the term "Slave Sweatshop" from the complaint because "[e]ven though several of the operators have recently pled guilty to slavery charges, the actual term 'Slave Sweatshop' adds nothing to the material allegations" and "appears only for inflammatory effect." The Court finds this case distinguishable because the minimal, one-time references to "fugitive slave laws," the "exploitative and racist wage-fixing scheme," and that Plaintiff was left "indentured" do not appear "only for inflammatory effect," as they do appear to accurately describe material allegations. Nor are they as direct and lacking in nuance as the repeated use of "Slave Sweatshop" in *Bureerong*. Moreover, *Bureerong* is non-binding and was decided almost thirty years ago and does not reflect the modern trend away from sanitizing or minimizing descriptions of racism and exploitation.

Court need not consider them. *See, e.g.*, *Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do not consider issues raised for the first time in reply briefs.").

The Court further notes that Ellison did not seek leave to file these supplemental arguments and exhibits, nor is there good cause to consider these improperly raised arguments. *See* LR 7-2(g) ("A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause. The judge may strike supplemental filings made without leave of court."). Ellison argues that the exhibits are "extremely probative to the Court in determining the sufficiency of the documents incorporated into the FAC." (ECF No. 146 at 6.) But at this stage, the Court is concerned with the sufficiency of the *allegations* and with the potential "overuse and improper application" of the incorporation by reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Ellison also claims that it did not obtain a copy of the transcript of Richins's testimony until after it had filed its motion to dismiss. (ECF No. 130 at 5 n.1.) However, Ellison does not sufficiently demonstrate that it acted diligently in its attempts to obtain the transcript. It is therefore possible that Ellison could have raised its incorporation by reference arguments by the time it filed its motion to dismiss if it had acted diligently. Moreover, it is unclear to the Court and Ellison itself whether the attached "WRA New Member Packet" is even the "WRA handbook" alleged in the FAC. (ECF No. 130 at 6 n.2.)

Accordingly, the Court grants Plaintiff's motion to strike in the sense that the Court in its discretion declines to consider Ellison's new incorporation by reference arguments and corresponding exhibits in its reply.

### D. Ellison's Motion for Leave to File Supplemental Brief

Ellison moves for leave to file a supplemental brief in support of its motion to dismiss. (ECF No. 161.) The proposed supplemental brief asks the Court to consider three nonconsecutive pages purportedly from the WRA handbook referenced in the FAC and argues that those pages contradict the FAC's allegations. (ECF No. 161-1 at 3, 12-14.) Ellison argues that good cause exists because it did not have a copy of these pages

until they were produced by Plaintiff in discovery and because granting the motion would give the Court the benefit of considering the document in determining whether the FAC is well-pleaded. (ECF No. 161 at 4.)

The Court is not persuaded that good cause exists to grant the motion. This motion for leave to file a supplemental brief comes over four months after the filing of Ellison's motion to dismiss. (ECF Nos. 99, 161.) While Ellison claims none of the Defendants have been able to locate a copy of this "2010 Members Manual" containing these pages (ECF No. 163 at 4), the Court finds the lateness of the motion and this second attempt to supplement the motion to dismiss to evince a general lack of diligence. Even if Ellison has acted with reasonable diligence, the Court still finds there is not good cause to grant the motion and consider the new exhibit because it is plainly incomplete and "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *See Khoja*, 899 F.3d at 1003. "This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* The Court agrees with Plaintiff that if Ellison wishes to dispute Plaintiff's factual allegations regarding the WRA handbook, it may do so "at summary judgment once a full record is developed." (ECF No. 162 at 3.)

The Court therefore denies Ellison's motion for leave to file a supplemental brief in support of its motion to dismiss.

### E. Sherman Act Claims

Having determined the scope of what it will consider at this motion to dismiss stage, the Court turns to the merits of Defendants' arguments that Plaintiff has not plausibly alleged Sherman Act violations. "To establish a section 1 violation under the Sherman Act, a plaintiff must demonstrate three elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in

which the claimant is engaged (i.e., 'antitrust injury')." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988) (citations omitted).

As to the first element, Ranch Defendants argue that the FAC lacks sufficient factual allegations of each of the Ranch Defendants' assent to and participation in an anti-competitive agreement. (ECF No. 96 at 7-8; ECF No. 99 at 11; ECF No. 109 at 8-9.) Plaintiff counters that an antitrust complaint "need not make detailed 'defendant by defendant' allegations." (ECF No. 125 at 19.) As explained below, the Court agrees with Ranch Defendants.

The Court previously found that Plaintiff sufficiently alleged that WRA entered into in an anti-competitive agreement with its members. (ECF No. 43 at 15.) Because the FAC's allegations as to WRA are substantially similar to those in the original complaint, that reasoning and finding still holds as to WRA. However, simply identifying Ranch Defendants as those alleged co-conspirator WRA members in the FAC with no additional factual allegations about how each of these specific Ranch Defendants is a party to the alleged agreements is insufficient.

First, "membership in an association does not render an association's members automatically liable for antitrust violations committed by the association," and "[e]ven participation on the association's board of directors is not enough by itself." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). Therefore, Plaintiff's allegations that Ranch Defendants are each members of WRA and that several of WRA's past and present directors, officers, and executive director are affiliated with some of the Ranch Defendants are insufficient on their own. (ECF No. 50 at 7-8, 13-17.)

Plaintiff attempts to distinguish from the Ninth Circuit's decision in *Kendall* by arguing that "this Court has already determined that Plaintiff alleges much more than mere parallel conduct." (ECF No. 125 at 21-22.). But the Court only made such a determination as to WRA, not these specific Ranch Defendants. An amended complaint supersedes an original complaint, and therefore, Plaintiff may not simply rest on the Court's prior order on WRA's motion to dismiss the original complaint, particularly where

Ranch Defendants were not specifically named until the filing of the FAC. *Kendall* is controlling here.

Plaintiff also argues that the Second Circuit's decision in *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, 61 F.4th 299 (2d Cir. 2023), is instead instructive here. (ECF No. 125 at 20.) In *Relevent*, 61 F.4th at 307, the court found that "the adoption of [a binding anti-competitive association] policy, combined with the [members'] prior agreement, by joining [the association], to adhere to its policies, constitutes an agreement on the part of all—whether they voted in favor of the policy or not—to adhere to the announced restriction on competition." Here, there are no allegations of a comparable membership agreement, whereby Ranch Defendants agree to "comply fully" with WRA's policies as a condition of membership, such that they are bound to WRA's allegedly anticompetitive policies or have "surrender[ed] [themselves] completely to the control of [WRA]." *See id.* at 303, 307. Therefore, unlike in *Relevent*, there *is* a need "to allege a prior 'agreement to agree' or conspiracy to adopt the polic[ies]." *See id.* at 307.

Next, Plaintiff does not allege with sufficient specificity who from the Ranch Defendants entered into the purported agreements with WRA. *See Kendell*, 418 F.3d at 1048 ("[T]he complaint [should] answer 'the basic questions: who, did what, to whom (or with whom), where, and when?"). While the Court is not persuaded that *Kendall* requires the names of the specific employees who entered into a purported agreement, Plaintiff must state more than a blanket "WRA members, including Defendants" and that each of them "engages in all of the anticompetitive conduct alleged herein." *See Kendall*, 518 F.3d at 1048 (rejecting allegations that "the Banks" "knowingly, intentionally and actively participated in an individual capacity in the alleged scheme" as too conclusory); *see also Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 995 (N.D. Cal. 2015) ("Defendant Insurers are large organizations, and Plaintiffs' bare allegation of a conspiracy would be essentially impossible to defend against.").

For instance, Plaintiff alleges that "[t]he WRA convenes regular membership meetings," "[i]ts members therefore have numerous opportunities to conspire with one

another at those meetings," and "WRA members discussed [the no-poach agreement] at WRA meetings." (ECF No. 50 at 17, 30.) But the FAC does not allege that employees of any particular Ranch Defendant attended, much less provide names or anonymized references to the individual employees from each Ranch Defendant who attended and therefore could have entered into agreements. *Cf. In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement."). Thus, to the extent Ranch Defendants entered into any agreements at such meetings, it is unclear who entered into such agreements.

Plaintiff contends that "to survive a motion to dismiss, a complaint need only 'make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy'" and is not required to "plead facts as to what each [D]efendant did within the conspiracy." (ECF No. 125 at 19.) The Court agrees with this standard, *see In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008), but does not agree with Plaintiff that he has met it for the Ranch Defendants. While the Court in its prior order found the allegations of Richins's testimony and the WRA handbook, among other allegations, suggest WRA entered into some illicit agreement with its members, the Court finds that more specific factual allegations are required to plausibly allege that these specific Ranch Defendants entered into any such agreement. For instance, Plaintiff does not specifically allege that someone from each of the Ranch Defendants received the letter referenced in Richins's testimony or the WRA handbook instructing what the wage rate should be and manifested agreement in some manner.

Accordingly, the Court finds that Plaintiff has not plausibly alleged that Ranch Defendants entered into an agreement or conspiracy in violation of the Sherman Act and will grant Ranch Defendants' motions to dismiss on that basis.[9] The Court however grants

---

[9]Having so found, the Court need not—and does not—address Ranch Defendants' remaining arguments for dismissal. To the extent WRA has joined those arguments, given how WRA is situated differently from Ranch Defendants, the Court finds that it does not make sense to address these arguments only as to WRA and generally finds them unpersuasive as they are not tailored to WRA.

Plaintiff leave to amend the complaint as to Ranch Defendants because it cannot find that amendment would be futile where Plaintiff could possibly allege additional specific factual allegations as to each Ranch Defendant, particularly given the parties' representations that they have been and are currently engaging in discovery. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) ("[D]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment.").

## IV.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Ellison Ranching Company's Rule 12(f) motion to strike (ECF No. 100) is denied.

It is further ordered that Plaintiff Cirilo Ucharima Alvarado's motion to strike new arguments in Defendant Ellison Ranching Company's reply in support of its motion to dismiss or, in the alternative, for leave to file a sur-reply (ECF No. 141) is granted, as specified herein.

It is further ordered that Defendant Ellison Ranching Company's motion for leave to file a supplemental brief in support of its motion to dismiss (ECF No. 161) is denied.

It is further ordered that Defendants F.I.M. Corp., Faulker Land and Livestock Company, Inc., and Need More Sheep Co., LLC's motion to dismiss (ECF No. 96) is granted in part and denied in part, as specified herein.

It is further ordered that Defendant Ellison Ranching Company's motion to dismiss (ECF No. 99) is granted, as specified herein.

It is further ordered that Defendant Ellison Ranching Company's motion to seal Exhibit B to Ellison's reply in support of its motion to dismiss (ECF No. 131) is granted. Exhibit B to Ellison's reply (ECF No. 132) will remain under seal.

It is further ordered that Defendants Borda Land & Sheep Company, LLC, Holland Ranch, LLC, John Espil Sheep Co., Inc., and Little Paris Sheep Company, LLC's motion to dismiss (ECF No. 109) is granted, as specified herein.

It is further ordered that Plaintiff must file his amended complaint containing amended allegations to cure the deficiencies identified herein within 30 days of the date of this order. Failure to do so will result in dismissal of the claims against the Ranch Defendants without prejudice.

DATED THIS 4th Day of March 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE