**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| CIRILO UCHARIMA ALVARADO,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN RANGE ASSOCIATION, *et al.*,<br><br>Defendants. | Case No. 3:22-CV-00249-MMD-CLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>[ECF No. 313] |

Currently pending before the Court is Plaintiff Cirilo Ucharima Alvarado's ("Alvarado") motion to compel Defendant Western Range Association ("WRA") to produce the data in its "SHEP" database in native form, current through the date of production, or, alternatively, to permit an inspection of the database. (ECF No. 313.) WRA opposed (ECF No. 315), and Alvarado replied. (ECF No. 317.) For the reasons stated below, the motion to compel is denied.

## I. BACKGROUND

### A. SHEP Requests and Production

Alvarado served his first set of Requests for Production on May 30, 2023. (ECF No. 313 at 3.) He sought electronically stored information ("ESI") "in its native format and all associated metadata." (*Id.*) WRA served responses on August 11, 2023. (*Id.*) On November 21, 2023, the Court entered the parties' stipulated ESI Order. (ECF No. 160.) Section 6(b) of the ESI Order requires the parties to produce "structured data" and "databases" in native format, "provided, however, that the Parties will meet and confer regarding appropriate format of production for any Documents that need specialized software to make accessible." (*Id.* at 5.)

Alvarado learned of SHEP, a database WRA uses to track herders, ranches, and related information, during a March 2024 inspection of WRA's office. (ECF No. 313 at 1.)

The parties then conferred about how the SHEP data would be produced. On July 25, 2024, WRA identified nine SHEP data categories, sent two sample exports, "one with Excel, one with screenshots," and recommended Excel. (*Id*. at 4.) On July 26, 2024, Alvarado's counsel responded: "it appears that the Excel files are properly format[ted] so that is how we request the SHEP data be produced." (ECF No. 315 at 29.) On July 29, 2024, WRA confirmed that it "intend[ed] to produce all data, limited by any agreements the parties make in meeting and conferring over the relevance of the fields," that it considered the "Contacts," "Financial," and "System" fields not relevant, and that "WRA will produce the SHEP info in Excel format." (*Id*. at 28.)

On August 2, 2024, WRA produced 297 native files, accompanied by the declaration of Monica Youree, who stated that she converted the SHEP data into Excel files "using the software's internal conversion function." (ECF No. 313 at 7.)

Discovery was stayed from January 2 to January 17, 2025, and again from February 28, 2025, until August 8, 2025. (*Id*. at 3-4.) On January 21, 2026, Alvarado served a Rule 34 request to inspect SHEP. (*Id*. at 6.) WRA objected on February 12, 2026, principally on the ground that Alvarado already possessed the SHEP data in the format he requested. (*Id*.) After a February 23, 2026 conference, Alvarado paused the inspection while WRA considered whether it could provide a database export. (*Id*.) The parties exchanged correspondence and conferred again in July and August 2026 without resolving the dispute. (*Id*. at 6-8.) Alvarado filed a motion under the Court's informal discovery dispute procedure, which the Court denied because that procedure is suspended, granting leave to file a motion to compel. (ECF Nos. 307, 308.) Alvarado filed this motion on September 30, 2026. (ECF No. 313 at 8-9.)

Alvarado now asks the Court to order WRA to produce an SQL export of the entire SHEP database within 21 days or, alternatively, to order the inspection and the production of a database schema. (*Id*. at 2, 23-24.)

///

///

## II. LEGAL STANDARD

District courts have "broad discretion to manage discovery and to control the course of litigation." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "materials sought [that] are reasonably calculated to lead to the discovery of admissible evidence." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). "The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 301 (D. Nev. 2019) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *See, e.g., F.T.C.*, 291 F.R.D. at 553. Arguments against discovery must be supported by "specific examples or articulated reasoning." *Slagowski v. Cent. Wash. Asphalt,* No. 2:11-cv-00142-APG, 2014 WL 3001951, at *6 (D. Nev. July 1, 2014) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

The Court "must limit" discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or where "the party seeking discovery has had ample opportunity to

obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). A request for production "may specify the form or forms in which electronically stored information is to be produced," Fed. R. Civ. P. 34(b)(1)(C), and "[a] party need not produce the same electronically stored information in more than one form," Fed. R. Civ. P. 34(b)(2)(E)(iii); *see Flynn v. Love*, No. 3:19-cv-00239-MMD-CLB, 2022 WL 2481738, at *5 (D. Nev. July 6, 2022). Although the Federal Rules do not apply a fixed deadline for a motion to compel, a court may deny one as untimely where the movant unduly delayed. *See Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 354–55 (D. Nev. 2019).

## III. DISCUSSION

As Alvarado highlights, WRA, the party resisting discovery, bears the burden of showing why the requested discovery should not be permitted. *Blankenship*, 519 F.2d at 429. WRA has carried that burden, not through boilerplate objections, but with specific reasons: Alvarado's own July 2024 request that the SHEP data be produced in Excel, WRA's production in that form with an accompanying declaration, the availability of the same information in documents already produced, and the passage of nearly a year of open discovery before Alvarado raised any deficiency. (ECF No. 315 at 6-11.) The motion fails first because Alvarado waited too long to challenge a production made in the form he requested. It additionally fails because the database has been produced in the format agreed upon by both parties, and regardless, all the requisite information exists elsewhere in the Defendants' nearly <u>500,000</u> produced documents.

### A. Alvarado's Knowledge of the Deficiencies

WRA produced the SHEP data on August 2, 2024, in the Excel format Alvarado chose after reviewing samples. (ECF No. 313 at 4; ECF No. 315 at 29.) Every defect Alvarado now identifies was in those files from the day they were produced. The absence of internal key fields, cells containing software object references and hyperlinks, truncated values, empty tables, and exports with different creation dates all existed when they were produced in 2024. (ECF No. 313 at 5-6.) Alvarado describes these defects as "plainly apparent," and asserts that "one can readily discern that the production is inadequate by

counting the thousands of corrupted cells." (ECF No. 317 at 10.) If the defects were that apparent, a reasonably diligent review of the production would have revealed them in 2024.

Alvarado offers two explanations, and neither is persuasive. First, he contends the defects were not apparent from the eight-row sample WRA provided in July 2024. (*Id.* at 7.) That may explain why Alvarado accepted the sample, but it does not explain the months that followed his receipt of the full production. Second, Alvarado states that his counsel and experts discovered the problems when they attempted to analyze the files after the stay was lifted. (ECF No. 313 at 6.) But the stays do not account for the delay. Excluding the stayed periods, discovery was open for roughly eleven months between the August 2, 2024 production and Alvarado's January 21, 2026 inspection request: about five months before the first stay, six weeks between the stays, and more than five months after discovery resumed in August 2025. (*Id.* at 4-6.) Alvarado does not explain why no one reviewed the production during that time in either their motion or their response.

**B. The Rules Require Alvarado to Raise Objections Promptly.**

Rule 34 contemplates that disputes over form will be resolved "before the expense and work of the production occurs." Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment. Here, the parties did exactly that: WRA proposed a form, provided samples, and Alvarado requested production in that form. Having approved the form and received the production, Alvarado was obligated to raise any problem with it within a reasonable time. Instead, he raised nothing for nearly a year of open discovery and did not file this motion until more than two years after the production. Rule 26(b)(2)(C)(ii) directs the Court to limit discovery where the requesting party "has had ample opportunity to obtain the information." Alvarado had that opportunity in 2024.

Alvarado emphasizes that after February 2026, WRA agreed to explore an export and then gave slow, noncommittal responses for months. (ECF No. 313 at 6-7; ECF No. 317 at 11.) The Court does not condone WRA's lack of responsiveness during that period. However, the relevant question is when Alvarado knew or should have known of the

alleged deficiencies, and the answer is August 2024. WRA's handling of a request made eighteen months after the production does not cure the delay that preceded it. Moreover, once WRA objected on February 12, 2026, Alvarado chose to wait more than seven additional months before filing this motion.

Alvarado asks the Court to order WRA to re-produce its entire database, more than two years after it completed the agreed production, as part of discovery WRA describes as already exceeding 500,000 documents. (ECF No. 315 at 4.) Alvarado stresses that his class certification expert reports are due February 12, 2027. (ECF No. 313 at 8.) That urgency is largely of Alvarado's own making and does not justify requiring WRA to relitigate a production that was settled in 2024.

The Court therefore finds that Alvarado's challenge to the 2024 production is untimely.

**C. Rule 34 Does Not Require a Second Production**

Rule 34 permits the requesting party to specify the form of ESI production. Fed. R. Civ. P. 34(b)(1)(C). Alvarado did so. After reviewing WRA's samples, his counsel wrote: "that is how we request the SHEP data be produced." (ECF No. 315 at 7.) WRA produced the data in that form. (ECF No. 313 at 4.) Because Alvarado specified the form, Rule 34(b)(2)(E)(ii)'s default standard, which applies when a request "does not specify a form," does not govern. And Rule 34(b)(2)(E)(iii) provides that WRA "need not produce the same electronically stored information in more than one form." *See Flynn*, 2022 WL 2481738, at *5–6.

Alvarado's principal response is that the dispute concerns completeness, not form: he agreed to receive all SHEP data in Excel, and WRA did not deliver it. (ECF No. 313 at 18-19) The Court is not persuaded. WRA's statement that it would "produce all data" was expressly "limited by any agreements the parties make in meeting and conferring over the relevance of the fields" and was paired with its commitment that "WRA will produce the SHEP info in Excel format." (ECF No. 315 at 2.) The deficiencies Alvarado identifies, including missing internal keys, object references in place of values, and truncated text,

are characteristics of the Excel export method that WRA disclosed and Alvarado approved. Alvarado himself attributes the problems to "the method used to generate the Excel files." (ECF No. 317 at 2.) And the remedy he seeks, an SQL export of the underlying database, is production of the same information in a different form. That is precisely what Rule 34(b)(2)(E)(iii) does not require.

The cases Alvarado cites do not compel a different result. In *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 652–56 (D. Kan. 2005), the court had ordered production of spreadsheets as they were maintained, and the producing party then scrubbed metadata and locked cells. Here, there was no such order, and no evidence that WRA altered the files after exporting them. In *Venture Corp. v. Barrett*, 2014 WL 5305575, at *2 (N.D. Cal. Oct. 16, 2014), the production consisted of folders of files with no index or organization. WRA's production, by contrast, consisted of files exported from SHEP in the agreed format. Finally, in *Morgan Hill Concerned Parents Ass'n v. California Department of Education*, 2017 WL 445722, at *5–7 (E.D. Cal. Feb. 1, 2017), the producing party chose its own format without agreement. Here, Alvarado chose the format.

For the above reasons, the Court rejects Alvarado's argument that reproduction of SHEP database in a new form is required.

**D. The ESI Order Does Not Require a Different Result**

Alvarado also relies on Section 6(b) of the ESI Order, which generally requires native production of databases and preservation of metadata. (ECF No. 313 at 15.) But Section 6(b) expressly provides that "the Parties will meet and confer regarding appropriate format of production for any Documents that need specialized software to make accessible." (ECF No. 160 at 5.) The parties did what Section 6(b) contemplates: they met and conferred and agreed that the SHEP data would be produced in Excel. The ESI Order does not entitle Alvarado to set aside that agreement two years later.

**E. The Requested Production Is Cumulative and Disproportionate**

The Court assumes, without exploring table by table, that SHEP contains

information relevant to Alvarado's claims. (ECF No. 313 at 15-16.) However, relevance alone does not entitle Alvarado to the relief he seeks.

First, the information Alvarado identifies has already been produced in other forms. Alvarado explains that WRA uses SHEP to auto-populate each herder's employment agreement, Form 790 and Form 9142 labor certification filings, and Form I-129 petitions with the wage rate for the herder's work location. (ECF No. 315 at 7.) WRA states that those documents were produced as part of its document production, and that the paper files Alvarado's counsel selected during the March 2024 inspection "reflect the same information that is entered into the SHEP database." (*Id.* at 6–7). Alvarado's reply does not respond to WRA's argument that the information is available from these sources. Rule 26(b)(2)(C)(i) requires the Court to limit discovery that is cumulative or obtainable from another source.

Second, the relief Alvarado seeks is not tailored to his requests. Alvarado asks for an export of every table in the database, including tables WRA identified as irrelevant in July 2024 and categories such as internal staff information and data backups. (ECF No. 313 at 13.) Alvarado acknowledges that he cannot say what many of these tables contain. (ECF No. 313 at 26; ECF No. 317 at 3.) And Alvarado did not tie the SHEP data to particular requests for production during the parties' conferences; he did so for the first time in this motion. (See ECF No. 315 at 5, 12.) A wholesale database export untethered to specific requests is not proportional to the needs of the case.

The Court recognizes that this is a significant, complex case and that WRA controls the SHEP database. See Fed. R. Civ. P. 26(b)(1). However, those considerations do not outweigh the cumulative nature of the request, its breadth, and Alvarado's ample prior opportunity to obtain the information. The Court also notes that WRA did not submit evidence quantifying the burden of a new export. (*See* ECF No. 317 at 8.) The Court does not see this as a burden issue. Rather, Rule 26(b)(2)(C) requires the Court to limit cumulative discovery, and discovery the requesting party had ample opportunity to obtain, whether or not the responding party has quantified its cost.

**F. Rule 26(e) Does Not Require Re-Production of the 2024 Data**

Alvarado argues that WRA's duty to supplement independently requires a new export current through the date of production, and that a full export would be no more burdensome than supplementation. (ECF No. 313 at 28.) Rule 26(e) requires a party to supplement a response that is incomplete or incorrect in a material respect. Fed. R. Civ. P. 26(e)(1)(A). It does not require a party to re-produce, in a new form, information it already produced in the agreed form.

WRA's 2024 production covers SHEP data through June 30, 2024. (ECF No. 313 at 22.) WRA represents that it has never resisted its duty to supplement and does not object to producing a further export of the agreed tables in Excel format. (ECF No. 315 at 13.) The Court accepts that representation and will require WRA to supplement accordingly.

**G. The Alternative Requests for an Inspection and a Schema Are Denied**

Alvarado alternatively asks the Court to order the remote inspection he noticed in January 2026 and to require WRA to produce a schema identifying every table and field in the SHEP database. (ECF No. 313 at 23-24.)

The inspection request fails for the reasons discussed above. The stated purpose was to determine what data SHEP contains and what could be exported, so that Alvarado could obtain a different production of the same data. (*Id*. at 6, 12.) The request is therefore duplicative of the 2024 production and untimely for the same reasons as the motion itself.

The schema request fares no better. Alvarado points to Request for Production No. 44, which sought data dictionaries and similar documents "sufficient to explain the meaning of any structured data produced." (*Id*. at 24.) But Alvarado did not move to compel a further response to that request after WRA answered it in 2023, and he did not raise the absence of a schema after receiving the 2024 production. He first demanded a schema in the September 2026 stipulation negotiations and this motion. (*Id*. at 8-9.) The request is untimely. The Court notes, however, that WRA has stated it would be willing to produce a schema as an alternative to the relief Alvarado seeks. (ECF No. 315 at 14.)

Nothing in this order prevents the parties from agreeing to that exchange, and the Court encourages them to confer about it.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Alvarado's motion to compel production of discovery, (ECF No. 313), is **DENIED**.

**IT IS SO ORDERED.**

**DATED**: November 24, 2026.



**UNITED STATES MAGISTRATE JUDGE**